# WHELING.

## STATE *v.* BARNETT.

Submitted June 17, 1890.—Decided June 24, 1890.

1. OFFENCES AGAINST THE PEACE — CARRYING WEAPONS — EVIDENCE.

   A mere conditional threat of violence by one person towards another, unaccompanied by any act or conduct on the part of the party making such threat evincing a design to do violence to the other person, will not justify the carrying of a revolver under section 7, c. 148, Code 1887.

2. OFFENCES AGAINST THE PEACE — CARRYING WEAPONS — EVIDENCE.

   It is not enough to justify carrying such revolver for a person to prove by himself or others, that he had good cause to believe and did believe, that he was in danger of death or great bodily harm at the hands of another; but he must show the facts and circumstances on which such belief is based, in order that the jury may determine whether the defendant believed and had good cause to believe, that he was in such danger.

3. OFFENCES AGAINST THE PEACE — CARRYING WEAPONS — EVIDENCE.

   Fear of harm from a dog will not justify carrying a revolver.

4. OFFENCES AGAINST THE PEACE—CARRYING WEAPONS.

   A United States mail-carrier, merely because he is such, has no right under said statute to carry a revolver.

*W. Miller* and *C. E. Hogg* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

BRANNON, JUDGE :

Kendall Barnett was indicted in the Circuit Court of Jackson county, in August, 1889, for unlawfully carrying a revolver, and a jury was waived, and the case. tried by the court, which found him guilty and passed judgment against him for twenty five dollars fine, to which he obtained this writ of error.

He assigns as error, that the Circuit Court erred in finding him guilty and rendering judgment against him. The bill of exceptions shows that the defendant admitted that

he had within one year next before the finding of said indictment, and within said county of Jackson, carried a revolver; and the State here rested its case. The defendant then proved by himself the following facts : That, at all times when he carried said revolver, he was a mail-carrier in the said county; that, as such mail-carrier, it was his duty to carry the United States mail from the post-office in the village of Cottageville, in said county to the railroad near said village; that he was required to make four trips each day with said mail; that defendant, and also one James Scott, lived in said village ; that the said Scott lived by the side of the public road, along which defendant was compelled to travel in carrying said mail as aforesaid ; that said James Scott had, during the time defendant carried said revolver, a vicious and dangerous dog, which had frequently attacked defendant while passing along the road with said mail, and had driven defendant from the said public road. Defendant also proved that before he carried said revolver the said James Scott had been mad at him, and had threatened to beat and whip him, and to have his blood, if defendant killed his (Scott's) dog; that said Scott had so threatened defendant personally, and also to other persons, who had communicated said threats to defendant. Defendant also proved that he was at the time aforesaid a quiet and peaceable citizen, of good character and standing in the community in which he lived, and that, at the time he carried said revolver, he had good cause to believe, and did believe, that he was in danger of death or great bodily harm at the hands of said James Scott, and from said dog, and that he was, in good faith, carrying said revolver in self-defence, and for no other purpose whatever; that said dog had never bitten defendant, and that defendant passed said Scott's at other times when not carrying the mail, but that he carried no weapon except when carrying the mail. And the defendant also proved by———Barnett, another witness, that the said dog was dangerous and vicious; that he had seen said dog attack said Kendall Barnett, defendant, while on the public road carrying the mail, and that said James Scott had said in witness's presence that he (Scott) would beat defendant to death if defendant did not

pay over certain money which had been bet; and that wit-
ness had communicated these threats of said Scott to de-
fendant.   Defendant further proved by himself that he had,
after the said threats of said Scott, applied to one D. W.
Rhodes, a justice, for a peace-warrant for said Scott, and
that said Rhodes advised him not to take such warrant,
but to get along without it; and also proved by himself
that he had carried said revolver only when engaged in
carrying the mail as aforesaid, and that he did not carry
it at other times, although said Scott lived near him.   And
the defendant further proved by D. W. Rhodes that he
(said Rhodes) was at the time aforesaid, and is, a justice of
the said county; that he resided, and does now reside, at
the said village of Cottageville; that said defendant, some
time in the summer of 1888, applied to him, as justice, for
a peace-warrant for said James Scott; that he did not issue
such warrant, but told defendant to try and get along with-
out it, as he and Scott were neighbors; that on the 4th
day of July, 1888, he heard a difficulty near the post-office
in Cottageville; that on going there he saw defendant and
said Scott, (said Scott seemed to be under the influence of
whisky,) and that he and defendant were quarreling; that
defendant came to witness, and said that he (defendant)
was not able to fight Scott, and, if said Scott pushed on
him, (defendant,) that defendant would hurt him, and said
to witness, "If you don't believe it, look here," and showed
witness a revolver, and that witness advised defendant to
take his revolver home, or he might get into trouble, and
that defendant then started home; that defendant and
Scott were quarreling for about twenty minutes.   And,
these being all the facts admitted or proved on the trial of
said indictment on either side, on consideration thereof the
court found the defendant guilty, and assessed his fine
at twenty five dollars.

The fact of the carrying of the weapon is admitted.   Has
the defendant established a defence?   A question presented
itself to my mind as to how this bill of exceptions should
be regarded as to that feature stating that it was proved
that defendant was a quiet and peaceable citizen, and had
good cause to believe, and did believe, that he was in

danger of death or great bodily harm at the hands of said Scott,—whether it should be treated as certifying those matters as facts proven in the opinion of the court, or simply as a recital of the evidence of the defendant himself, at least as to his fear and cause of fear, if not as to his character; but, looking at the structure of the bill, I conclude that it is to be treated as certified evidence, not a certificate of facts, and the evidence of the defendant as to that matter. It is not enough for the defendant to state or show by other witnesses the general proposition that he had good cause to believe, and did believe, that he was in danger; for that is merely opinion or inference drawn from the facts by the witness; but it must be shown what were the facts constituting the basis or ground of the defendant's belief, so that it may be determined by the jury or court whether there existed cause to inspire fear, and whether the defendant, as a reasonable man, should have feared.

Viewing this bill as exhibiting the evidence, we hold that the evidence does not show that defendant had good cause to fear death or great bodily harm at the hands of Scott. Kendall says he carried the revolver only when carrying the mail, though Scott lived near him. This shows that he had no real fear of Scott.

The threats made by Scott were conditional and appear insufficient to inspire any serious ground of fear. He threatened, according to defendant's own evidence, to beat and whip the defendant, and have his blood, if he killed his dog, not absolutely; and, according to———Barnett, he threatened to beat defendant to death if he did not pay over certain money which had been bet. It is not shown that the dog was killed, or whether or not the money was paid over. These are mere idle threats or bravado. Not a single act of violence or attempted violence on Scott's part appears; and, though a quarrel is shown, it is not proved that Scott did or said anything special in it, and the character and details of the quarrel are not given. A mere threat standing isolated and alone, while admissible in evidence in defence as an item of evidence, does not establish sufficient ground for the defendant to fear death or harm, especially a conditional or idle threat, wholly unattended by

any act or conduct of the defendant manifesting a design to do the defendant harm, or carry the threat into execution, within the true meaning of section 7, c. 148, Code 1887. If such were the ruling of the courts, it would largely rob this useful statute of the beneficial effect it was intended to accomplish in the preservation of life and the public peace. We cannot reverse the finding and judgment of the court below unless it plainly appear that the finding is erroneous. Something, too, must be accorded to the opinion of the judge, who saw the witnesses face to face and could, better than we can, judge of their credibility, *Dudleys* v. *Dudleys*, 3 Leigh. 436; *Mitchel* v. *Baratta*, 17 Gratt. 452. But, admitting all that the defendant's presentation of the case tends to show, it shows an insufficient defence.

We do not think any fear, which the defendant may have felt of injury from a dog, constitutes any justification for carrying a revolver. The statute specifies several exceptions, but this is not one of them. The careful specification of particular exceptions in the statute shows that others were not intended. The statute should not be frittered away by the introduction of such exceptions.

We do not think the defendant's position as a mail-carrier gave him the right to carry a revolver under the clause giving officers charged with the execution of the laws of the state the right to carry certain weapons. Judgment affirmed.

AFFIRMED.