## HATHCOTE *v.* STATE.

Decided November 28, 1891.

1. *Carrying weapons—Mail carrier.*

A United States mail carrier, while engaged in his employment, is not authorized by reason thereof to carry weapons in a manner prohibited by State laws.

2. *Carrying weapons upon a journey.*

It cannot be laid down as a matter of law that one whose daily business as a mail carrier takes him to a point thirty miles distant is not, while so engaged, "on a journey," within the exception to sec. 1907, Mansf. Dig., prohibiting the carrying of weapons. It would still be a question for the jury whether in so doing he passes beyond the circle of his general acquaintance, the exception being designed as a protection against perils of the highway to which strangers are exposed, and which are not supposed to exist among one's neighbors.

APPEAL from *Grant* Circuit Court.

A. M. DUFFIE, Judge.

Pie Hathcote was convicted of carrying a pistol as a weapon. A witness, W. H. Crutchfield, testified that defendant, while engaged in carrying the mail, stopped at a postoffice on his route, and that, while sitting down waiting for the mail to be changed, a pistol dropped out of his pocket. Defendant testified: "At the time mentioned I was engaged regularly in carrying the United States mail for Mr. G. M. Floyd, the contractor, from the town of Malvern, in Hot Spring county, to Sheridan, in Grant county, a distance of about thirty miles. It took a day to make a trip each way, I remaining over night at Sheridan. Carrying the mail as above stated was at that time my usual daily occupation. In going from Malvern to Sheridan and in returning my route took me past the house of Mr. Morton, where a postoffice was kept at which the mails were changed. The route I was compelled to travel daily lay for part of the distance through the Saline river bottoms, which are there covered with a dense forest; and for a distance of four or more miles there is no house or other place where any per-

son lives. I never owned or carried a pistol of any kind in my life, except when carrying an extra large mail or registered matter of value, on which occasion I carried a pistol given me by Mr. Floyd, my employer, and did not carry it then as a weapon but only for the purpose of guarding the mail if necessary. I had such a pistol at the time stated. It was not an army or navy pistol. It was loaded, and I carried it in my pocket, and for the purpose alone of protecting the mail." This was all the evidence.

The defendant asked the court in substance to instruct that if the ury found that he was engaged in carrying the United States mail or was upon a journey, they should acquit. The court refused the instruction as asked, and charged that mail carriers as such were not exempt from the penalties of the act, and that if defendant was going from a definite point to a definite point and in the regular routine of his daily business, he was not upon a journey, although he might go beyond the circle of his neighborhood in going from one of said points to another.

*Morris M. Cohn* for appellant.

The appellant, being in discharge of his duty as mail carrier and having been charged with a crime in carrying out his duties as such mail carrier, is not amenable for such act to the State. 135 U. S., 1; 6 Wheat., 498; 3 Wall, 240; Rorer, Inter-State Law, 15 (ed. 1875).

2. Appellant was on a journey. 34 Ark , 448.

*W. E. Atkinson*, Attorney General, and *Charles T. Coleman* for appellee.

1. He was not on a journey; it was his daily occupation. 45 Ark., 761; 53 Ala., 519; 68 *id.*, 41; 49 *id.*, 355; 5 S. W. Rep., 90.

2. A mail carrier is not a public officer of the United States, nor was defendant acting in discharge of his duties in carrying a pistol as a weapon. Mech., Pub. Officers, secs. 41, 713, 5; 17 Gratt., 243. Nor has he, because he is a mail carrier, the right, under our statutes, to carry a pistol as a

weapon. 11 S. E. Rep., 735. 135 U. S., 1, does not sustain the claim in this case. See the dissenting opinion in re *Neagle.*

HEMINGWAY, J. Engagement in the service of the federal government implies no license to violate State laws; and a crime against the State is not excused by the fact that the criminal was, at the time, though not in the act, of its commission, engaged in such service. No such doctrine is found in Neagle's case, for it only holds that what the federal government enjoins as a duty the State cannot punish as a crime. In re *Neagle*, 135 U. S., 1. It by no means follows that if a federal officer, while engaged in his employment, does some independent act in violation of State laws, he may not be held to answer for it. Tne defendant shows no authority from the federal government empowering him as a mail carrier to carry weapons; and we think the fact that he was a mail carrier affords no justification for the act, in the absence of such authority. *State* v. *Barnett*, 34 W. Va., 74; S. C., 11 S. E. Rep., 735.

*1. Right of mail carrier to carry weapons.*

But the defendant insisted that he was upon a journey when he carried the weapon, and therefore not liable to indictment; upon this defense he submitted instructions that were refused, and the court gave an instruction to which he excepted. Out of this arises the only other matter involved in the appeal.

*2. What is a journey?*

The statute prohibits the carrying of weapons, but excepts from its operation "all persons when upon a journey." The alleged error in the court's charge relates to what constitutes a journey within the meaning of the exception. In its original acceptation a journey was a day's travel, but in use it has attained a broader though less definite meaning. As generally understood it signifies travel to a distance from home, and it is not used in reference to travel in one's neighborhood or among one's immediate acquaintances.

The statute intends to prohibit the practice of carrying weapons when unnecessary and harmful, but to tolerate it

in particular cases as necessary to defense; and such necessity is supposed to exist to persons when on a journey. This implies that such persons are then exposed to probable perils from which otherwise they are exempt, and in defining its scope the exception should be as broad as the reason for it, but not broader.  Persons traveling within the circle of their general acquaintance are supposed to be within its protection, and exempt from perils of the highway to which they are exposed when they pass beyond it.  So, within the circle of their general acquaintance they are held not to be on a journey, while beyond it they are on a journey.  *Smith* v. *State*, 3 Heisk., 511 ; *Davis* v. *State*, 45 Ark., 359 ; *Wilson* v. *State*, 68 Ala., 41 ; *Burst* v. *State*, 89 Ind., 133.

When one within contemplation of the statute is protected by his general acquaintance, and therefore prohibited from carrying a weapon, and when he passes beyond the protection of such acquaintance so that he may carry defensive weapons, are questions in most cases for the jury upon a proper charge.  And while the circumstances proved in some cases may be so plain as to justify a charge that they come within one rule or the other, we do not think such charge justified where the defendant was traveling a distance of thirty miles from one county site to another, carrying the mail, although he made the trip one way daily.  In this case the court in effect charged the jury that if the defendant was going from one definite place to another in the regular routine of his daily business, he was not upon a journey. As a general thing the routine of a man's daily business is within the circle of his immediate acquaintance, and does not extend beyond the protection which acquaintance is supposed to afford the traveler; it is therefore in most cases a proper test of the right to carry a pistol.  But it fails as a test where one in the ordinary routine of his daily business passes hurriedly along, is not brought in contact with the people, and has no general acquaintance among them.  One carrying mail between distant points is not necessarily brought into intercourse with the people along his route, and

may be as much a stranger to them, though he make the trip daily, as if his business employed him at a remote place. Why, therefore, should the simple fact that he daily passes upon the highway deny him the right to carry defensive weapons, which the law deems necessary and proper for strangers? His neighbors, whose business does not call them upon the highway, have the privilege; why should he, who is protected no more by general acquaintance than they, be denied it? According to the law as charged, a resident of the same town as the defendant, whose regular routine of daily business did not call him to Sheridan, would be upon a journey while going to that place, while the defendant would not be, though no more acquainted along the route than they, because he made the trip daily.

There is nothing, as we think, in the reason or policy of the act to justify this distinction, and while we cannot state an unbending rule by which to define the scope of the exception, it should in every case be interpreted in the light of good sense and with regard to the spirit and intent of the statute. The prohibition was designed to stop the carrying of weapons on the streets, in society, and among one's habitual associates; the exception was designed to permit it when necessary to defend against perils of the highway to which strangers are exposed and that are not supposed to exist among one's own neighbors. We think the charge given made the test of defendant's right to carry a weapon too narrow, and excluded from the consideration of the jury evidence tending to establish a valid defense.

Reverse and remand.