# CHARLESTON.

## STATE *vs.* WORKMAN.

Submitted September 8, 1891.—Decided November 21, 1891.

1. CONCEALED WEAPONS—CONSTITUTIONAL LAW.

The seventh section of chapter 148 of our Code provides as follows: "If a person carry about his person any revolver or other pistol, dirk, bowie-knife, razor, slung-shot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor, and fined not less than twenty five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe, to be under the age of twenty one years, he shall be punished as hereinbefore provided. But nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling-house or premises any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling-house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again. And if upon the trial of an indictment for carrying any such pistol, dirk, razor, or bowie-knife the defendant shall prove to the satisfaction of the jury that he is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor, or bowie-knife, as charged in the indictment, he had good cause to believe, and did believe, that he was, in danger of death or great bodily harm at the hands of another person, and that he was, in good faith, carrying such weapon for self-defence and for no other purpose, the jury shall find him not guilty." These provisions are not in conflict with the constitution of the United States, nor that of West Virginia.

2. CONSTRUCTION OF STATUTES.

Whenever an act of the legislature can be so construed as to avoid conflict with the constitution, such construction will be adopted by the courts.

3. CONCEALED WEAPONS—CONSTITUTIONAL LAW.

This section requires a statutory acquittal as mandatory in favor of persons who prove good character and standing in the

community, and that they were in good faith armed only for self-defence; but though not mandatory as to persons who fail to prove such good character, it nevertheless does not in terms deprive them of any right or guaranty to which they may be entitled under the constitution, nor should such deprivation be constructively implied.

4. CONCEALED WEAPONS.

A mere indefinite threat of violence, the nature and extent of which is not given in evidence, unaccompanied by any act or conduct on the part of the party making such threat evincing a design to do violence to the prisoner, will not justify the carrying of a pistol under section 7, c. 148, of the Code.

*W. E. Chilton* for plaintiff in error cited Cool. Con. L. 427; Bish. Stat. Cr. §§ 792, 793; 2 Litt. 90; 1 Ala. 612; 32 Ga. 225; 4 Ark. 18; 8 Am. Rep. 8; 3 A. K. Marsh. 72; 11 S. E. Rep. 740; Id. 735; Cons. U. S. Art. XIV, sec. 1; 33 W. Va. 179, 182, 188; 3 Mer. 326; 4 Heisk. 357; 5 Sawy. 552; 26 La. Ann. 671; 70 Mich. 534; 11 Mass. 396; 13 Wis. 233, 244; 24 Am. Dec. 513; Id. 515, 538 (n), 543 (n.)

*Attorney-General Alfred Caldwell* for the State cited 34 W. Va. 74; 92 U. S. 542; 116 U. S. 265; 123 U. S. 131; Id. 664; 31 Ark. 455; 134 U. S. 31; 90 Mo. 302; 7 Bax. (Tenn.) 57; 53 Ga. 472; 77 Pa. St. 470; 3 Heisk. 165; 36 N. C. 697; 11 Whar. Cr. Law. (8th Ed.) § 1553, 1557; Id. note 9; 52 Ind. 516; Whar. Cr. Ev. § 128; 133 U. S. 333; 129 U. S. 114; Id. 26; 128 U. S. 96; 127 U. S. 209; Id. 678; 125 U. S. 691; 139 U. S. 462; 136 U. S. 436; 137 U. S. 692; 114 U. S. 615; 2 Edw. 111. s. 3.

LUCAS, PRESIDENT:

This was an indictment in the Circuit Court of Boone county under section 7, c. 148, of the Code against carrying concealed weapons. A jury was waived, and the case submitted to the court, which upon the evidence found the defendant guilty, and imposed a fine of twenty five dollars, and a *capias pro fine* was issued.

The evidence of the defence was as follows: "The defendant, Erastus Workman, to maintain the issue on his part, put on the stand one Elsworth Workman, who stated that he had heard one George Ball threaten to take the life of the said defendant, Erastus Workman; that he (the

witness) had communicated said threats to the defendant, Erastus Workman; that the general reputation of the said George Ball was that he was a dangerous man, and that he (the witness) considered him so; that he (the witness) communicated said threats to the defendant, Erastus Workman prior to the time spoken of by the witness for the State. Ester A. Ball, another witness for the defendant, stated that she was the sister of the defendant, and was at the time of the finding of the indictment against the said defendant the wife of one George Ball; that she (the witness) had heard the said George Ball threaten to take the life of the defendant, Erastus Workman, repeatedly, during the winter of 1888 and 1889, and during the spring of 1889; that she had heard said threats, and communicated them to the said defendant, Erastus Workman, before the time spoken of by the witness for the State; and that the said George Ball was a very dangerous man. The defendant, Erastus Workman, testified that he was informed more than once during the spring of 1889 that one George Ball had threatened to take his (the defendant's) life; that those threats were communicated to him, the said defendant, before he ever carried a pistol; that he never carried a pistol before the threats were made against him; that he was afraid of the said George Ball; that the said George Ball was a dangerous man; and that he carried the pistol for no other purpose than to defend himself against the said George Ball."

Without going into the evidence on the part of the State in detail, I may say that the offence of carrying a pistol on his person by the defendant was fully proved, and also admitted by the prisoner himself in his own testimony. The only question was whether the evidence of the defendant brought him within the defence proposed by the statute itself, when it declares that under certain circumstances the jury shall find the prisoner not guilty.

It is contended in the very able brief of defendant's counsel that every element of this defence was made out, except that the defendant failed to prove that he was "a quiet and peaceable citizen, of good character and standing in he community." It is argued that this clause, viewed as a

47

proviso, or condition precedent to the admission of evidence which otherwise would establish a good defence under the statute, is in violation of the fourteenth article of the constitution of the United States, which provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Also, that it is in derogation of article 3, § 1, of our bill of rights, which guarantees to every one "the enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety."

If the Circuit Court had put such a construction on this clause of the statute as to exclude the other exculpatory testimony because good character and standing had not been proved, the question here raised would have presented itself for our decision. But the Circuit Court has made no such exclusion. From aught that appears in the record the Circuit Court excluded no testimony offered by the prisoner, and gave to that adduced all the weight to which it was entitled.

There is a well-recognized cannon of construction which may be applied to the clause in question, and that is that such an interpretation, where possible, should be given to a law as will avoid apparent conflict with the constitution. In other words, as was said by this Court in *Osborn* v. *Staley*, "whenever an act of the legislature can be so construed as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts." 5 W. Va. 85.

The clause in question as well as the whole act, might be so construed, by the exercise of ingenuity to that end, as to diminish materially the right of self-defence, as guaranteed by the constitution, not only to persons of good repute, but also to those of evil reputation. But such a construction will not be adopted when it may be avoided. The clause which we are now considering may be construed simply as a rule of evidence established by the legislature

for the better enforcement of the prohibitory feature of the act. Without it there might have been a doubt whether proof of character could be introduced under an indictment for carrying concealed weapons. The legislature has removed that doubt, and has, moreover, said in effect that when a man is found going around with a revolver, razor, billy or brass knuckles upon his person, he shall be presumed to be a burglar, duelist, gambler, thief or other criminal of the like violent and dangerous class; but when he removes this presumption, as he may by proving that he is a quiet and peaceable citizen of good character and standing in the community in which he lives, and further proves that he was so armed because he had good cause to believe, and did believe, that he was in danger of death or great bodily harm at the hands of another person, and that he was in good faith carrying such weapons in self-defence and for no other purpose, the jury shall find him not guilty.

If the statute had gone on to provide that in case of not proving good standing *etc.*, the jury should find the prisoner guilty, there would have been more doubt about the constitutional question; but the law does not say so, and, so far as this act goes, the prisoner who fails to prove his good reputation is left in the hands of the jury, under full protection of the common-law and the constitution. In other words, a statutory acquittal is mandatory in favor of persons who prove good character, and that they were in good faith armed only for self-defence; but, though not mandatory as to persons who fail to prove such good character, it nevertheless does not in terms deprive them of any right or guaranty to which they may be entitled under the constitution, nor should such deprivation be constructively implied.

The presumption which the law establishes, that every man who goes armed in the midst of a peaceable community is of vile character, and a criminal, is in consonance with the common law, and is a perfectly just and proper presumption, and one which ought to prevail in every community which aspires to be called civilized. Neither would there be any constitutional objection to enacting that any person who proves good character should be acquitted by

the jury upon lighter evidence as to his good faith in his plea of self-defence than should a person who tacitly admits himself to be of evil fame by failing to introduce evidence to the contrary. This is a discrimination, it is true, between classes; but it is only a discrimination in favor of the virtuous class against the dangerous and vicious.

But it is argued that even if the clause just considered be not unconstitutional, or be not involved in the present case, yet the whole act is in derogation of the second amendment to the constitution of the United States, which provides that, "a well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."

Supposing this to be a restriction upon legislation by the several states, as well as by the congress (a question upon which authorities differ) we may still conclude that by law to regulate a conceded right is not necessarily to infringe the same. Thus, a prohibition against passing any law abridging the freedom of speech or of the press would scarcely be so construed as to prohibit all statutes defining and punishing slander or criminal libel; and the inhibitation against passing any law restricting the free exercise of religion would not prevent the passage of an act prohibiting immorality when practiced as a religious tenet. *Late Corporation, etc.,* v. *U. S.,* 136 U. S. 2, 49, 67, (10 Sup. Ct. Rep. 792).

The second amendment of our federal constitution should be construed with reference to the provisions of the common law upon this subject as they then existed, and in consonance with the reason and spirit of the amendment itself, as defined in what may be called its "preamble." As early as the second year of Edward III., a statute was passed prohibiting all persons, whatever their condition, "to go or ride armed by night or by day." And so also at common law the "going around with unusual and dangerous weapons to the terror of the people" was a criminal offence. Bish. Crim. St. § 784; *State* v. *Huntley,* 3 Ired. 418 *State* v. *Roten,* 86 N. C. 701.

The keeping and bearing of arms, therefore, which at the date of the amendment was intended to be protected

as a popular right, was not such as the common law condemned, but was such a keeping and bearing as the public liberty and its preservation commended as lawful, and worthy of protection. So, also, in regard to the kind of arms referred to in the amendment, it must be held to refer to the weapons of warfare to be used by the militia, such as swords, guns, rifles, and muskets—arms to be used in defending the State and civil liberty—and not to pistols, bowie-knives, brass knuckles, billies, and such other weapons as are usually employed in brawls, street-fights, duels, and affrays, and are only habitually carried by bullies, blackguards, and desperadoes, to the terror of the community and the injury of the State. Bish. Crim. St. § 792.

Although this question of constitutionality has never been expressly passed upon by this Court, or the Court of Appeals of Virginia before the separation, yet both courts have administered the law, and consequently, by implication at least, affirmed its constitutionality. So far as I have been able to ascertain, the Court of Appeals of but one State of the Union has unqualifiedly held such laws unconstitutional, and in that State the decision was based upon the peculiar language of the State constitution. The same court has also held that, "if a man feel sure that his life is in continual danger, and that to take the life of his menacing enemy is his only security, he may kill that enemy whenever and wherever he gives him a chance, and there is no sign of relenting." *Carico* v. *Com.*, 7 Bush 124. It would thus seem that the State can not constitutionally prohibit the carrying of deadly weapons; and, secondly, that upon a mere threat to kill, made by your enemy, you may hunt him down, and, without waiting for any hostile demonstration on his part, may take his life. We have but to put these two-alleged principles of law together, in order to destroy that security of life and that social order which are absolutely essential to civilization. In the State where they have been announced, a prolific harvest of murders, street-fights, and family feuds has been their natural fruition, to the degradation and terror of society, and the abasement of justice and civil order. In this State, just the reverse has been held as to both the principles alluded

to.   *Cain's Case*, 20 W. Va. 689 ; *State* v. *Evans*, 33 W. Va. 418 (10 S. E. Rep. 792.)

In *State* v. *Barnett*, 34 W. Va. 74 (11 S. E. Rep. 735) it was held that "a mere conditional threat of violence by one person towards another, unaccompanied by any act or con-duct on the part of the party making such threat evincing a design to do violence to the other person, will not justify the carrying of a revolver, under section 7, c. 148, Code 1887." In the opinion of the court in that case, it is further said : "A mere threat, standing isolated and alone, while admissible in defence as an item of evidence, does not estab-lish sufficient ground for the defendant to fear death or harm, especially a conditional or idle threat, wholly unat-tended by any act or conduct of the threatener, manifest-ing a design to do the defendant harm, or carry the threat into execution, within the true meaning of section 7, c. 148, Code 1887. If such were the ruling of the courts, it would largely rob this useful statute of the beneficial effect it was intended to accomplish in the preservation of life and the public peace. We can not reverse the finding and judgment of the court below, unless it plainly appear that the finding is erroneous. Something, too, must be accorded to the opinion of the judge who saw the witnesses face to face and could, better than we can, judge of their credibility. *Dudleys* v. *Dudleys*, 3 Leigh, 436 ; *Mitchell* v. *Baratta*, 17 Gratt. 452. But, admitting all that the defendant's pre-sentation of the case tends to show, it shows an insufficient defence."

This language is exactly applicable to the present case, which is not as strong a one in favor of the prisoner as was the Case of Barnett. Where nothing further appears in evidence for the defence than a mere threat of violence which has been communicated to the prisoner, I doubt whether it ought in any case to be considered sufficient to compel an acquittal under the statute, especially where suf-ficient length of time has elapsed to have enabled the pris-oner to seek the protection of the law, as prescribed in chap-ter 153 of the Code, by having his adversary arrested and bound over. If he has neglected this precaution and safe-guard provided by law, I doubt whether this fact ought

not of itself to be considered such an impugnment of his "good faith" as to render it improper to acquit.

In cases where there are aggravating circumstances the full penalty of the law should be inflicted, while a lighter penalty should be imposed if there are circumstances of a mitigating character. In the present case the penalty imposed was the least which the statute prescribes. The judgment of the Circuit Court is affirmed.

AFFIRMED.