PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* RAFAEL DÍAZ-CINTRÓN, Defendant and Appellant.

No. 2810. Argued November 18, 1926.—Decided April 8, 1927.

R. *Rivera Zayas*, R. *Martínez Nadal* and R. *Muñoz Ramos* for the appellant. *José E. Figueras* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The court below convicted the defendant of the offense of carrying a revolver and sentenced him to three months in jail.

He appealed from that judgment and in his brief assigns that the court erred in overruling his motion for the dismissal of the prosecution because more than sixty days had elapsed between the time when he had been arrested and that of the filing of the information, without justification for non-compliance with the statute. In support of that motion the defendant offered the testimony of P. Rodríguez Serra, district attorney, but the witness testified that the defendant had been arrested for carrying arms on December 19, 1925, or the same day on which the information in this case was filed.

It seems, however, that the theory of the appellant is that as he was arrested on September 30, 1925, for assault with intent to kill, and was again arrested on September 30, 1925, for voluntary manslaughter, and as the arm which he carried was the same with which the killing was done, more than sixty days had elapsed from the date of either of these arrests to December 19, 1925, when the information was filed for the carrying of arms. This last phase of the argument is presented under the third and the fourth assignments of error which the appellant discusses jointly in his brief and which are to the effect: (*a*) That the defendant had been in former jeopardy for the same acts charged in the information, and (*b*) the failure of the court to consider the act of carrying the revolver, with which Rafael Díaz Cintrón was charged, as merged in the previous charge of voluntary manslaughter committed on the person of Carlos Brunet, of which he was acquitted by a jury "duly instructed by the judge of the District Court of Ponce, even of the charge of carrying prohibited arms."

Therefore, the appellant contends that as he had been acquitted of the charge of voluntary manslaughter committed with the weapon which is the subject of the information in the present case, he has been twice in jeopardy for the same offense. The appellant, in his effort to sustain the plea of former jeopardy, cites abundant jurisprudence which in no wise favors his contention, because all of it refers to prosecutions involving the same facts or to offenses necessarily included in the first information. But the jurisprudence of this Supreme Court has long ago decided the question of the carrying of weapons which have also been used for the commission of other offenses against the person. In the case of *Ex Parte Torres,* 11 P.R.R. 98, it was held:

"The crime of carrying firearms is different from the crime of discharging the same and causing the death of a person, and the former is not necessarily included within the latter, and therefore a defendant prosecuted and convicted of the former crime cannot successfully allege former jeopardy upon the prosecution for the second crime, that is to say, murder."

In the case of *Ex Parte Huertas,* 22 P.R.R. 489, it was likewise said that:

"The offense of carrying arms cannot be merged in the offense of assault and battery or riot."

In 16 C. J. 275, we find the following:

"Conviction of assault with intent to murder does not bar a prosecution for carrying a pistol, although both offenses were committed on the same occasion and were parts of the same transaction; and a conviction of the latter is not a bar to a prosecution for the former offense. A conviction for an assault with a weapon is not a bar to a subsequent prosecution for carrying a concealed weapon; and a conviction for carrying prohibited weapons is not a bar to a subsequent prosecution for assault and battery. An acquittal on the charge of unlawfully carrying brass knucks is not a bar to a subsequent prosecution for an assault with knuckles."

The second assignment attacks the constitutionality of Act No. 14 of June 25, 1924, forbidding the carrying of arms.

The appellant, after merely referring to the questions raised and decided in the cases of *People* v. *Vadi*, 34 P.R.R. 441; *People* v. *Acevedo*, 34 P.R.R. 439; *People* v. *Cruz Rosado*, 34 P.R.R. 305, and *People* v. *Rodríguez*, 35 P.R.R. 253, insists that the Act forbidding the carrying of arms is contrary to the second Amendment to the Constitution, under which Congress can not restrict the right of citizens to bear arms, and, consequently, that Congress has not legislated and could not legislate so as to limit or restrict the right of carrying arms in Porto Rico.

A similar proposition was submitted likewise in the case of *People* v. *González, ante,* page 222, in which this court said:

"The Constitution of the United States as such has been held not to be in force in Porto Rico. We have instead an Organic Act wherein certain prohibitions are mentioned but it contains no provision making impossible a law prohibitng the carrying of dangerous weapons. From 1905, when the first provision prohibiting weapons was adopted, it has always been understood that Porto Rico, not being within the constitutional inhibition aforesaid, could pass a law prohibiting the use of such dangerous weapons.

"On the point that Congress could not authorize Porto Rico to pass such a law, we are quite clear that full legislative powers have been conferred on Porto Rico, and within this grant it has all imaginable reasonable police powers including the right to forbid the carrying of dangerous weapons."

Carrying the discussion still farther, we may observe that the second Amendment to the Constitution does not have the scope and is not susceptible of the interpretation that the appellant endeavors to give it.

See the following paragraphs taken from the note to the case of *City of Salinas* v. *Blakeley*, 115 Am. St. Rep. 196:

"The second amendment to the United States constitution provides that, 'a well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed,' but this does not give the right to bear arms for a purpose declared unlawful or in an unlawful manner.

"Such amendment means no more than that it shall not be 'infringed' by Congress, and had no other effect than to restrict the powers of the national government: United States v. Cruikshank, 92 U. S. 542, 23 L. ed. 588; Presser v. Illinois, 116 U. S. 252, 6 Sup. Ct. Rep. 580, 29 L. ed. 615; Spies v. Illinois, 123 U. S. 131, 8 Sup. Ct. Rep. 21, 31 L. ed. 80.

"The second article of the amendments to the constitution of the United States securing to the people the right to keep and bear arms is a restriction upon the powers of the national government only, and not upon state legislation: Fife v. State, 31 Ark. 455, 25 Am. Rep. 556; State v. Shelby, 90 Mo. 302, 2 S. W. 468; English v. State, 35 Tex. 473, 14 Am. Rep. 374; State v. Workman, 35 W. Va. 367, 14 S. E. 9, 14 L.R.A. 600.

"The examination as to the constitutionality of state statutes relating to the keeping and bearing arms must, under the above construction of the second article of the amendments to the constitution of the United States, be made with reference to the respective constitutions of those states in which existing statutes were passed. . . State v. Reid, 1 Ala. 612, 35 Am. Dec. 44, and cases cited."

The appellant, pressing his point, goes still further and maintains that if the restriction created by the Second Amendment refers only to the Congress and not to the States, that legislative body could not delegate to the Legislative Assembly of Porto Rico, which is a territory, a power which it did not possess.

The strength of this argument is only apparent. The Congress of the United States occupies, as regards the territories, a double position: One as the Congress of the United States, limited in its powers by the Constitution, and the other as a local legislature to which many of such limitations are not applicable. *Binns* v. *United States,* 194 U. S. 486, 24 S. Ct. 816, 49 U. S. (L. ed.) 1087; *Rassmussen* v. *United States,* 197 U. S. 516, 25 S. Ct. 514, 49 U. S. (L. ed.) 862. It is under the latter authority that Congress has given broad legislative powers to the Legislature of Porto Rico, without establishing any restriction on the regulation or prohibition of the carrying of deadly or dangerous weapons. In the most recent case of *Balzac* v. *Porto Rico,* 258 U. S.

298, it was held that under Article IV, section 3, of the Constitution, Congress has paramount powers to make all necessary rules and regulations for the territories belonging to the United States.

The fifth error assigned by the appellant is the failure of the trial court to consider the defendant as included within the exception established by subdivision 9 of section 6 of Act No. 14 of 1924. This section provides as follows:

"Section 6.—That arms may be lawfully carried by— . . .
"9. Judges and fiscals;"

The defendant was appointed judge of the District Court of Ponce on June 28, 1923, for a term of four years. On September 16, 1925, the Legislature reorganized that court to consist of two judges. The power of the Legislature to do so is conferred by section 40 of the Organic Act, which provides:

"That the judicial power shall be vested in the courts and tribunals of Porto Rico now established and in operation under and by virtue of existing laws. The jurisdiction of said courts and the form of procedure in them, and the various officers and attachés thereof, shall also continue to be as now provided until otherwise provided by law; *Provided, however,* That the Chief Justice and Associate Justices of the Supreme Court shall be appointed by the President, by and with the advice and consent of the Senate of the United States, and the Legislature of Porto Rico shall have authority, from time to time as it may see fit, not inconsistent with this Act, to organize, modify, or rearrange the courts and their jurisdiction and procedure, except the District Court of the United States for Porto Rico."

On September 19, 1925, the day on which the defendant was carrying the weapon involved in this information, he had already ceased to be a judge of the old District Court of Ponce by virtue of the Act which abolished that court and that went into effect immediately after its approval, that is, September 16, 1925. It does not matter that the former court was abolished before the expiration of the appellant's term

as judge thereof. The power of the Legislature to act as it did is recognized from the first and in that connection it has been said:

"The power of the legislature to control public officers was established at an early day and, except when restrained by the constitution, the legislature of a state may abolish any office, even during the term for which an existing incumbent may have been elected. There is no obligation on the legislature or the people to keep up a useless office or pay an officer who is not needed. Whoever accepts a public office does so with this principle of constitutional law in view. The tenure of the office does not rest on contract and it is not protected by the constitutional provisions which prohibit the impairment of contracts. Accordingly it is a well established principle that an office of legislative creation may be abolished by the power which created it." 22 R.C.L. 579.

And if there was any doubt as to his position as a *de facto* judge, it is dispelled by the fact that the new judges had already been appointed on September 18, 1925, had taken the proper oaths for the discharge of their duties and had from that moment "qualified" as such judges of the District Court of Ponce; therefore, under no circumstances could the outgoing judge be considered as a *de facto* judge on September 19, 1925, the day on which the offense was committed.

In connection with the qualifications of public officers it is said in Mechen on Public Officers, page 162, that:

"The person elected or appointed to a public office is usually required by law, before entering upon the performance of his duties, to do some act by which he shall signify his acceptance of the office and his undertaking to execute the trust confided in him. This act is ordinarily termed *qualification*.

"This act generally consists in taking, and often in subscribing and filing, an official oath, and, in many cases, in furnishing an official bond for such a sum and with such sureties as the law may prescribe."

The last error which the appellant discusses refers to the weighing of the evidence. There he repeats the argument under the third and fourth assignments and, therefore, it

need not be further considered. Besides, the evidence is convincing and sufficient to support the judgment.

For the reasons stated the judgment appealed from must be affirmed.

Mr. Justice Hutchison took no part in the decision of this case.