EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL DÍAZ CINTRÓN, acusado y apelante.

No. 2810.—*Visto:* Noviembre 18, 1926. *Resuelto:* Abril 8, 1927.

1. DERECHO PENAL—FECHA DEL JUICIO Y SUSPENSIÓN—TARDANZA EN CELEBRAR EL JUICIO O PRESENTAR LA ACUSACIÓN—TÉRMINO PARA PRESENTAR LA ACUSACIÓN—COMPUTACIÓN DEL MISMO.—Realizado un delito con un arma, los sesenta días para presentar la acusación por la portación del arma debe contarse desde la fecha en que el acusado es arrestado por dicho delito y no desde la fecha o fechas en que se le arrestó por el delito realizado con dicha arma.

2. DERECHO PENAL—"FORMER JEOPARDY"—NECESIDAD DE QUE LOS DELITOS SEAN

Idénticos—Delitos Varios, Parte de la Misma Transacción—Homicidio Voluntario y Otros Delitos.—Procesada y absuelta una persona por el delito de homicidio voluntario realizado con un arma que es objeto de una acusación posterior, aquélla no puede alegar con éxito, al ser procesada por el delito de portar armas, exposición anterior por el mismo delito.

3. Derecho Penal—"Former Jeopardy"—Necesidad de que los Delitos Sean Idénticos—Delitos Varios, Parte de la Misma Transacción—Homicidio Voluntario y Otros Delitos.—El delito de portar armas prohibidas no · está incluido *(merged)* en el de homicidio voluntario.

4. Armas — Estatuto Prohibiendo Portar Armas — Constitucionalidad del Mismo.—La Ley No. 14 de 1924 (p. 115) no infringe la segunda enmienda de la constitución americana.

5. Armas — Estatuto Prohibiendo Portar Armas — Constitucionalidad del Mismo.—Como la enmienda a la Constitución Federal que garantiza al pueblo el derecho a poseer y tener armas es sólo una restricción sobre los poderes del Gobierno Nacional y no sobre la legislación estadual, la determinación de la constitucionalidad de nuestra Ley No. 14 de 1924 (p. 115) prohibiendo portar armas debe hacerse con referencia a nuestra Carta Orgánica—Ley Jones de 1917—y no con referencia a la Constitución Federal.

6. Armas—Facultad o Poder para Prohibir el Portar Armas—Poder Legislativo.—Al no establecer el Congreso Nacional, respecto a Puerto Rico, restricción alguna en cuanto a la reglamentación o prohibición de armas, dicho Congreso ha conferido a nuestra Legislatura amplias facultades para reglamentar y prohibir la portación de armas peligrosas.

7. Armas—Portar Armas Prohibidas—Del Delito en General.—Si después de aprobada una ley aboliendo una corte el juez de la corte abolida porta un arma, él viola la ley, no importa que la abolición de la antigua corte se decrete sin haber expirado el término para el cual fué nombrado.

8. Jueces—Nombramiento, Calificaciones *(Qualifications)* y Término del Cargo —De los Jueces *de Facto* en General.—El carácter de juez *de facto*—en determinada fecha—de una corte que ha sido abolida queda disipado cuando se demuestra que los jueces de la corte de nueva creación, en dicha fecha, ya habían sido nombrados y habían cualificado como tales.

Sentencia de *R. H. Todd, Jr.,* J. (Ponce), condenando al acusado por portar armas. *Confirmada.*

*R. Riveras Zayas, R. Martínez Nadal* y *R. Muñoz Ramos,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

La corte inferior declaró culpable al acusado del delito de portar un revólver y le impuso la pena de tres meses de cárcel.

Apeló de la sentencia y en su alegato señala como primer error haber desestimado la corte una moción en la que

solicitaba el sobreseimiento de la acusación por haber trans-
currido más de sesenta días desde que el acusado fué arres-
tado a la fecha en que fué presentada la acusación, sin que
existiera justa causa para que no se hubiese cumplido con
la ley. Con el fin de sostener la moción el acusado pre-
sentó la declaración de P. Rodríguez Serra, Fiscal del Dis-
trito, pero éste declaró que el acusado fué arrestado por el
delito de portar armas en diciembre 19, 1925, fecha en que
también fué formulada la acusación de este caso.

[1] Parece, sin embargo, que el apelante quiere signifi-
car que como él fué arrestado en septiembre 19, 1925, por
ataque para cometer asesinato y vuelto a arrestar en sep-
tiembre 30, 1925, por homicidio voluntario, y siendo el arma
que portaba el mismo instrumento con el cual se cometió
el homicidio, desde cualquiera de las fechas de estos arres-
tos a diciembre 19, 1925, en que se presentó la acusación
por portar armas, habían transcurrido más de sesenta días.
Este último aspecto de la argumentación está envuelto en
el 3º y 4º señalamientos de errores que discute conjunta-
mente el apelante en su alegato y que versan: (a) que el
acusado había sido expuesto anteriormente (*former jeop-
ardy*) por los mismos hechos que motivan la acusación, y
(b) no haberse considerado incluído (*merged*) el acto de
portar el revólver, por el cual se acusó a Rafael Díaz Cin-
trón, en el cargo anterior por homicidio voluntario come-
tido en la persona de Carlos Brunet y del cual fué absuelto
por un jurado, "debidamente instruído por el Juez de la
Corte de Distrito de Ponce, hasta del delito de portar ar-
mas prohibidas."

[2, 3] Sostiene, pues, el apelante que habiendo sido ab-
suelto de la acusación por homicidio voluntario realizado
con el arma que es objeto de la acusación en este caso, se
le expone dos veces por el mismo delito. El apelante, ha-
ciendo un esfuerzo para sostener la defensa de *jeopardy*,
cita abundante jurisprudencia que en nada le favorece, pues

ella toda se refiere a acusaciones que envuelven los mismos hechos o bien a delitos comprendidos necesariamente en la acusación. Pero en relación con la portación de armas, que han sido el mismo instrumento para cometer delitos de sangre, la jurisprudencia de esta Corte Suprema, desde hace años, había resuelto claramente la misma cuestión. En el caso *Ex parte Tórres*, 11 D.P.R. 101, se dice:

"El delito de portar un arma de fuego es distinto del de dispararla y causar con ella la muerte de una persona, no estando el primero necesariamente comprendido en el segundo, y por consiguiente, un acusado que haya sido procesado y condenado por el primer delito, no puede alegar con éxito, al ser procesado por el segundo delito, o sea, asesinato, que ha estado expuesto anteriormente por el mismo delito *(former jeopardy)*."

En el caso *Ex parte Huertas*, 22 D.P.R. 524, del mismo modo se dijo:

"El delito de portar armas prohibidas no puede ser mezclado o confundido *(merged)* con el de acometimiento y agresión o de motín."

En 16 C. J. 275 se lee lo siguiente:

"Una condena por un delito de acometimiento con intención de cometer asesinato no impide una acusación por portar una pistola, aunque ambos delitos hayan sido cometidos en la misma ocasión y sean parte de la misma transacción; y una condena por el último delito no es impedimento a una acusación por el primero. Una condena por acometimiento con un arma no es impedimento a una subsiguiente acusación por portar un arma ocultamente; y una condena por portar armas prohibidas no es un impedimento a una subsiguiente acusación por acometimiento y agresión. Una absolución de una acusación por portar ilegalmente una manopla no impide una subsiguiente acusación por acometimiento con manopla."

[4, 5] Por el segundo error se impugna la constitucionalidad de la Ley No. 14 de portar armas, aprobada en junio 25, 1924.

El apelante, después de hacer una mera referencia a las cuestiones que fueron levantadas y resueltas en los ca-

sos de *El Pueblo* v. *Vadi*, 34 D.P.R. 462; *El Pueblo* v. *Acevedo*, 34 D.P.R. 460; *El Pueblo* v. *Cruz Rosado*, 34 D.P.R. 315, y *El Pueblo* v. *Rodríguez*, 35 D.P.R. 279, el punto en que insiste es que la ley de portar armas infringe la segunda enmienda de la Constitución, por la que el Congreso no puede limitar a los ciudadanos el derecho a portar armas, y como consecuencia que el Congreso no ha legislado ni podía legislar para Puerto Rico limitando o restringiendo tal derecho a portar armas.

En forma parecida se presentó igual proposición en el caso de *El Pueblo* v. *González*, resuelto recientemente en febrero 11, 1927, (pág. 248) y esta corte dijo:

"Se ha resuelto que la Constitución de los Estados Unidos como tal, no está en vigor en Puerto Rico. En cambio, tenemos un Acta Orgánica en la cual se mencionan ciertas prohibiciones, pero la misma no contiene disposición alguna que impida que se apruebe una ley prohibiendo portar armas peligrosas. Desde el 1905, cuando se aprobó la primera ley de portar armas, siempre se ha entendido que Puerto Rico, no estando dentro de la prohibición constitucional a que hemos hecho referencia, podía aprobar una ley prohibiendo el uso de tales armas peligrosas.

"En cuanto a la cuestión de que el Congreso no podía autorizar a Puerto Rico a aprobar tal ley, estamos muy convencidos de que a Puerto Rico se le han conferido plenos poderes legislativos, y que dentro de tal concesión tiene todos los poderes de policía razonablemente imaginables, incluyendo el derecho de prohibir el portar armas peligrosas."

Extendiendo un poco más la discusión podemos hacer notar que la segunda enmienda de la Constitución no tiene el alcance ni la interpretación que a la misma se le pretende dar por el apelante.

Véanse los siguientes párrafos de la nota al caso de *City of Salinas* v. *Blaksley*, 115 Am. St. Rept. 196:

"La segunda enmienda a la Constitución de los Estados Unidos dispone que 'siendo necesaria una milicia bien organizada para la seguridad de un estado libre, el derecho del pueblo a poseer y to-

mar armas no será menoscabado,' pero esto no da derecho a portar armas con un fin declarado ilegal o en una forma ilegal.

"Tal enmienda no significa otra cosa sino que dicho derecho no será 'menoscabado' por el Congreso, y no tiene otro efecto que el de restringir los poderes del gobierno nacional: United States v. Cruikshank, 92 U. S. 542, 23 L. ed. 588; Presser v. Illinois, 116 U. S. 252, 6 Sup. Ct. Rep. 580, 29 L. ed. 615; Spies v. Illinois, 123 U. S. 131, 8 Sup. Ct. Rep. 21, 31 L. ed. 80.

    *       *       *       *       *       *       *

"La segunda enmienda a la Constitución de los Estados Unidos, que garantiza al pueblo el derecho a poseer y tomar armas, es una restricción sobre los poderes del gobierno nacional solamente, y no sobre' la legislación de los estados: Fife v. State, 31 Ark. 455, 25 Am. Rep. 556; State v. Shelby, 90 Mo. 302, 2 S. W. 468; English v. State, 35 Tex. 473, 14 Am. Rep. 374; State vs. Workman, 35 W. Va. 367, 14 S. E. 9, 14 L.R.A. 600. . .

"De acuerdo con la anterior interpretación de la segunda enmienda a la Constitución de los Estados Unidos, cuando se trata de determinar la constitucionalidad de las leyes de un estado que regulan el poseer y portar armas, tal determinación debe hacerse con referencia a las constituciones respectivas de los mismos estados. . . State v. Reid, 1 Ala. 612, 35 Am. Dec. 44 y citas."

El apelante, apurando su argumentación, va más lejos y sostiene que si la restricción de la segunda enmienda se refiere solamente al Congreso y no a los estados, aquel cuerpo legislativo no ha podido delegar una facultad que no tiene a la Asamblea Legislativa de Puerto Rico por tratarse de un territorio.

[6] Esta argumentación es más bien de fuerza aparente. El Congreso de los Estados Unidos, en relación con los territorios, ocupa una doble posición, la una como Congreso de los Estados Unidos, limitado en sus poderes por la Constitución, y la otra con el carácter de una legislatura local a las que muchas de las limitaciones no le son aplicables. *Binns* v. *United States,* 194 U. S. 486, 24 S. Ct. 816, 49 U. S. (L. ed.) 1087; *Rassmussen* v. *United States* 197 U. S. 516, 25 S. Ct. 514, 49 U. S. (L. ed.) 862. Y en el último sentido es que el Congreso ha dado amplias faculta-

des legislativas a la Legislatura de Puerto Rico, no estableciendo restricción alguna para reglamentar o prohibir la portación de armas mortíferas o peligrosas. En el caso más reciente de *Balzac* v. *Porto Rico*, 258 U. S. 298, asimismo se declaró que por el artículo IV, sección 3ª de la Constitución el Congreso tiene autoridad soberana para hacer todas las reglas y reglamentos necesarios para los territorios pertenecientes a los Estados Unidos.

[7] El quinto error que alega el apelante se funda en no haber la corte inferior considerado al acusado comprendido en la excepción que establece el apartado 9 del artículo 6 de la Ley No. 14 de 1924. El artículo prescribe:

"Art. 6.—Podrán usar armas legalmente—

\*　　\*　　\*　　\*　　\*　　\*　　\*

"9. Los Jueces y fiscales."

El acusado fué nombrado Juez de la Corte de Distrito de Ponce en 28 de junio de 1923 por un período de cuatro años. La legislatura en septiembre 16, 1925, reorganizó dicha corte constituyéndola con dos jueces. La facultad de la legislatura para proceder así, se deriva del artículo 40 del Acta Orgánica, que dispone:

"El poder judicial residirá en las Cortes y Tribunales de Puerto Rico ya establecidos y en ejercicio de acuerdo y por virtud de las leyes vigentes. La jurisdicción de dichos Tribunales y los trámites seguidos en ellos, así como los distintos funcionarios y empleados de los mismos, continuarán como al presente hasta que otra cosa se disponga por ley; *Disponiéndose, sin embargo,* que el Presidente y los Jueces asociados del Tribunal Supremo serán nombrados por el Presidente, con el concurso y consentimiento del Senado de los Estados Unidos, y la Asamblea Legislativa de Puerto Rico tendrá autoridad, que no esté en contradicción con esta Ley, para de tiempo en tiempo según lo crea conveniente, organizar, modificar o hacer un nuevo arreglo de los Tribunales y su jurisdicción y procedimientos, con excepción de la Corte de Distrito de los Estados Unidos para Puerto Rico."

En septiembre 19, 1925, fecha en que el acusado portaba

el arma que es objeto de la acusación, ya él había dejado de ser juez de la antigua Corte de Distrito de Ponce en virtud de la aprobación de la ley que abolió dicha corte y la cual empezó a regir inmediatamente después de su aprobación, o sea, desde septiembre 16 de 1925. No importa que la abolición de la anterior corte se haya decretado sin haber expirado el término del apelante como juez de la misma. El poder de una legislatura para proceder así se reconoce desde los primeros tiempos y en tal sentido se ha dicho:

"El dominio de la legislatura sobre los funcionarios públicos fué establecido desde los primeros tiempos, y excepto cuando está restringido por la Constitución, la legislatura de un estado puede abolir cualquier cargo, aun durante el término para el cual haya sido elegido el que lo ocupa. Ni la legislatura ni el pueblo están obligados a mantener un cargo inútil, ni a gastar en el pago de un funcionario que no se necesita. El que acepta un cargo público lo hace teniendo en cuenta este principio de derecho constitucional. El término del cargo no descansa en un contrato y no está protegido por las disposiciones constitucionales que impiden que se menoscabe la obligación de los contratos. Por lo tanto, es un principio bien establecido que un cargo creado por la legislatura puede ser abolido por el poder que lo creó." 22 R.C.L. 579.

[8] Y si hubiera alguna duda en cuanto al carácter que alega de juez *de facto,* ella quedaba disipada porque los nuevos jueces habían sido ya nombrados en septiembre 18, 1925, prestando el juramento correspondiente para el ejercicio de sus cargos y desde entonces quedaron dichos jueces "cualificados" como tales jueces de la Corte de Distrito de Ponce, sin que, por tanto, bajo ninguna circunstancia, podía considerarse al juez saliente como un juez *de facto* en septiembre 19, 1925, fecha de la comisión del delito.

En conexión con la cualificación de funcionarios para desempeñar un cargo público, en la obra "Mechen on Public Officers," pág. 162, se dice como sigue:

"A la persona elegida o nombrada para un cargo público usualmente se le exige por la ley, antes de entrar en el desempeño de sus deberes, hacer algún acto por el cual se signifique su aceptación del cargo y su propósito de llevar a cabo el encargo confiádole. A este acto ordinariamente se le llama calificación (*qualification*).

"Dicho acto generalmente consiste en prestar, y a menudo en suscribir y archivar, un juramento oficial, y, en muchos casos, en prestar una fianza oficial por aquella suma y con aquellas garantías que la ley determine."

El último error que discute el apelante se refiere a la apreciación de la prueba. En él se repite la misma argumentación de los errores 3º y 4º, por lo que se hace innecesario darle ulterior consideración. Por lo demás, la prueba es evidente y sostiene la sentencia.

*Por las razones expuestas, debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Hutchison no intervino.