**UNITED STATES v. ADAMS et al.**
**No. 4612–M–Criminal.**

District Court, S. D. Florida.
June 4, 1935.

Walter Barlow, Sp. U. S. Atty., of Washington, D. C.

Bart A. Riley and Robert C. Lane, both of Miami, Fla., for defendant.

RITTER, District Judge.

The defendant is charged with violations of several of the sections of the National Firearms Act, chapter 15A, §§ 861a to 861q, USCA title 26.

By a demurrer the defendant challenges the constitutionality of this act on the ground that it is not a revenue measure but an attempt to use police power, which the national government does not possess; that its object in fact is to regulate the sale and use of firearms which is a state function; and that it violates the Second Amendment to the Constitution of the United States.

This law provides:

(a) That every importer, manufacturer, and dealer in firearms shall register and pay a special classified tax per year.

"Firearms" is defined as "a shot gun or rifle having a barrel of less than eighteen inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition." (26 USCA § 861 (a).

"Machine gun" is defined as "any weapon which shoots, or is designed to shoot, automatically or semiautomatically more than one shot, without manual reloading, by a single function of the trigger." (26 USCA § 861 (b).

"Dealer" is defined as "any person not a manufacturer or importer engaged within the continental United States, in the business of selling firearms. The term 'dealer' shall include wholesalers, pawnbrokers, and dealers in used firearms." (26 USCA § 861 (g).

The act is listed under Internal Revenue and further provides:

(b) A tax upon each transfer of a firearm, and

(c) Details are prescribed for such transfer and a complete record of each firearm is provided;

(d) Every person possessing a firearm shall register with the collector of internal revenue and the firearm meticulously identified "within sixty days after the thirtieth day after June 26th, 1934" (26 USCA § 861d, subd. (a), and the possession of any firearm after said date, without having registered as provided, shall create the presumption that such firearm came into the possession of the defendant subsequent" (26 USCA § 861d, subd. (b) to the aforesaid date;

(e) It is made unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of the law;

(f) Firearms not transferred as provided may be seized as taxable articles and dealt with accordingly and penalties are prescribed for violations.

In deciding upon the validity of a statute, its direct and necessary result must be considered and must be reasonably adapted to the collection of taxes if a revenue measure. Collins v. New Hampshire, 171 U. S. 30, 18 S. Ct. 768, 43 L. Ed. 60; Bailey v. Drexel Furniture Co., 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432.

The question presented, therefore, is whether from its terms, this act must be held to have a direct and necessary relation to the tax in its general scope or has some other purpose as its main object. The power of the United States government to tax is full and complete and includes the power to determine what articles will be taxed. License Tax Cases, 5 Wall. 462, 18 L. Ed. 497.

The Harrison Anti-Narcotic Act (26 USCA §§ 211, 691 et seq.) was held constitutional as a taxing measure in the case of United States v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 216, 63 L. Ed. 493. This act was attacked upon the same grounds as are now asserted against the National Firearms Act. A comparison of the two leads to the conclusion that the latter was formulated upon the former.

The National Firearms Act closely follows in form the Harrison Anti-Narcotic Act, as amended sections 691–707, 26 U. S. C. (26 USCA §§ 691–707). In the former, the importer, manufacturer, and dealer registers (26 USCA § 861a). In the latter, importers, manufacturers, and wholesale dealers keep such records as the Commissioner prescribes (section 694). In the former there is a tax imposed on each

gun of the class described which is transferred (section 861b); in the latter, upon certain salt derivatives sold or removed for consumption (section 691). In the former there must be tax stamps on the transfer order (section 861b). In the latter the stamps go on the package (section 692). In the former it is unlawful to sell except in pursuance of a written order from the purchaser (section 861c). So in the latter (section 696). The form of the order in each case comes from the· Commissioner of Internal Revenue (sections 861c, 696). In the former the Commissioner himself sees to it that only the proper person gets the order forms (section 861c). In the latter that duty is delegated to accredited dealers or physicians who work under the constant scrutiny and inspection of the Commissioner (sections 696, 701). Penalties are provided for sales or transfers not in accordance with the law in each case (sections 861m, 705). In each law there are recognized exceptions and exemptions (sections 861l, 696 (a–d).

In upholding the Harrison Anti-Narcotic Act in the case supra, the court held that the act is a constitutional exercise of the taxing power, and said:

"The only limitation upon the power of Congress to levy excise taxes of the character now under consideration is geographical uniformity throughout the United States. * * *

"And from an early day the court has held that the fact that other motives may impel the exercise of federal taxing power does not authorize the courts to inquire into that subject. If the legislation enacted has some reasonable relation to the exercise of the taxing authority conferred by the Constitution, it cannot be invalidated because of the supposed motives which induced it. * * *

"The act may not be declared unconstitutional because its effect may be to accomplish another purpose as well as the raising of revenue. If the legislation is within the taxing authority of Congress —that is sufficient to sustain it. In re Kollock, 165 U. S. 526, 536, 17 S. Ct. 444, 41 L. Ed. 813.

"The legislation under consideration ·was before us in a case concerning section 8 of the Act [26 USCA § 700], and in the course of the decision we said: 'It may be assumed that the statute has a moral end as well as revenue in view, but we are of opinion that the District Court, in treating those ends as to be reached only through a revenue measure and within the limits of a revenue measure, was right.'"

This act was again upheld in Alston v. United States, 274 U. S. 289, 47 S. Ct. 634, 71 L. Ed. 1052.

It was again under review and approved as a taxing law in Nigro v. United States, 276 U. S. 332, 48 S. Ct. 388, 72 L. Ed. 600.

The National Firearms Act is a revenue measure. Back of it may have been a motive to prevent racketeers, bank robbers, and desperadoes from obtaining sawed-off shotguns and machine guns to run wild in crime and to enable the government to trace ownership; but where there is a power to tax, which from a reasonable construction can be construed to be the intention, the imposition of the tax is the determining feature and cannot be treated as being without the power because of the destructive effect of exercise of the authority upon the article or business connected therewith.

The power to tax carries with it, as Justice Marshall long ago said, "the power to destroy." McCulloch v. State of Maryland, 4 Wheat. 316, at page 431, 4 L. Ed. 579. It is not part of the functioning of the court to inquire into the reasonableness of the exercise of the taxing power, either as represents the amount or the property upon which it is imposed. Whatever other motive there may be behind the act is immaterial.

In addition to the aforesaid decisions, the following support this doctrine: Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482; McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; United States v. Jin Fuey Moy, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; Hill v. Wallace, 259 U. S. 44, 42 ·S. Ct. 453, 66 L. Ed. 822, in which case the Child Labor Case (Bailey v. Drexel Furniture Co.), 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, is distinguished; Linder v. United States, 268 U. S. 5, 45 S. Ct. 446, 69 L. Ed. 819, 39 A. L. R. 229.

The second amendment to the Constitution, providing, "the right of the peo-

ple to keep and bear arms, shall not be infringed," has no application to this act. The Constitution does not grant the privilege to racketeers and desperadoes to carry weapons of the character dealt with in the act. It refers to the militia, a protective force of government; to the collective body and not individual rights. This is well presented in State v. Workman, 35 W. Va. 367, 372, 14 S. E. 9, 14 L. R. A. 600, and is sustained by the following: Hill v. State, 53 Ga. 472; Civil Rights Case, 109 U. S. 3, 31, 3 S. Ct. 18, 27 L. Ed. 835; Robertson v. Baldwin, 165 U. S. 275, 281, 17 S. Ct. 326, 41 L. Ed. 715; McKenna, The Right to Keep and Bear Arms.

The other grounds of the demurrer are overruled. The indictment contains all the statutory requirements. United States v. Cook, 17 Wall. (84 U. S.) 168, 21 L. Ed. 538; Evans v. United States, 153 U. S. 584, 14 S. Ct. 934, 38 L. Ed. 830; Schlemmer v. Buffalo, R. & P. R. Co., 205 U. S. 1, 27 S. Ct. 407, 51 L. Ed. 681.