UNITED STATES v. TOT.

District Court, D. New Jersey.
Aug. 14, 1939.

John J. Quinn, U. S. Atty. (William A. Smith), of Red Bank, N. J., for the Government.

George R. Sommer, of Newark, N. J., for Defendant.

FORMAN, District Judge.

On June 30, 1938, Congress enacted the Federal Firearms Act, 15 U.S.C.A. §§ 901–909, which, became, by its terms, effective thirty days after its enactment. Among its provisions is the following: "(f) It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this chapter." 15 U.S.C.A. § 902(f).

On the morning of September 22, 1938, a Special Agent of the Federal Bureau of Investigation served upon the defendant, at his apartment at 182 East Kinney Street, Newark, New Jersey, a warrant for his arrest, issued upon a complaint made on September 21, 1938, charging the defendant with stealing from Interstate Commerce. At the time of the arrest, the Agent inquired of the defendant whether he had a gun. Defendant admitted possession of a weapon, and told the Agent it was in the pocket of his coat, hanging near by. The Agent removed a revolver from the coat pocket. Other accompanying Agents contemporaneously searched the apartment. Subsequently, the defendant was taken from the premises and arraigned before a United States Commissioner. There is no dispute as to these facts.

The defendant was indicted on November 15, 1938, in the following language: "That on or about the 22nd day of September in the year 1938 at the City of Newark in the County of Essex and State and District of New Jersey and within the jurisdiction of this Court, one Frank Tot, otherwise Frank Tott, whose true and correct name, other than as herein stated, is to the Grand Jurors unknown, he, having been theretofore duly convicted on the 22nd day of June in the year 1935 in the Special Sessions Court of the County of Essex, in the State of New Jersey, before Honorable Edwin C. Caffrey, Judge of said Court, of a crime of violence, to wit, assault and battery with intent to beat, wound and ill-treat one James Johnson, did knowingly, unlawfully and feloniously conceal and store a certain firearm, to wit, a 32 calibre Colt Automatic pistol, which said pistol had been theretofore shipped in interstate commerce; contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States."

A petition was filed by defendant, alleging that the "search and seizure was illegal, unreasonable, unjust, made without probable cause, without a search warrant, and not as an incident to a lawful arrest, in violation of the Fourth and Fifth Amendments to the Constitution of the United States of America".

He prayed that an order be made directing the Director of the Federal Bureau of Investigation and the United States Attorney for the District of New Jersey, and

all other Federal Authorities, to return the property (the revolver is the only property shown to have been seized) taken by virtue of said search, to the defendant, and, generally, to have the information and evidence acquired by the search and seizure suppressed.

Upon the hearing on this petition, the defendant objected, first, that the seizure was unlawful, unreasonable, and in violation of the defendant's rights under the Fourth and Fifth Amendments to the Constitution, U.S.C.A., and secondly, that the Federal Firearms Act, in so far as it relates to the indictment against the defendant, is unconstitutional.

## As to the Alleged Illegal Search and Seizure

It is conceded that the arrest of the defendant was lawful in that the officers were armed with a warrant for the arrest of the defendant. However, the defendant complains that, contemporaneously with the arrest, the officers ransacked the living quarters of the defendant in an exploratory search, and cites Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775, and other decisions of the United States Supreme Court, holding such searches, even though incident to the service of an arrest warrant, to be a violation of Constitutional rights. The defendant fails to note that an important exception to searches and seizures, otherwise objectionable, is made in the matter of relieving a defendant, who is being arrested, of a weapon or other thing which may be used to effect an escape from custody.

In Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 51 A.L.R. 409, the Court said: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted. See Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 [39 A.L.R. 790], Weeks v. United States, 232 U.S. 383, 392, 34 S. Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177." This rule can be no less the law when the arrest is by virtue of a warrant, although the defendant is not actually engaged in the commission of a crime, as the facts in the case at bar disclose.

Any other action by the officer in this case might well have left the defendant in position to reach for his coat, possess himself of his revolver and effect his escape, with violent results to the agents, himself, or all. In justice to him, let it be noted that he frankly admitted possession of the revolver, and even offered to get it for the agent. But, if the agents' actions in this case were regarded as anything but lawful, provocation to escape and the hazard to the safety of the arresting officer would not be minimized, and, indeed, a premium would be placed upon such actions. The search for, and the seizure of, the revolver in this case, was reasonable and legal, and violated no Constitutional right of the defendant.

## As to the Alleged Unconstitutionality of the Federal Firearms Law as It Relates to the Indictment of This Defendant

It is contended that Section 2(f) of the Federal Firearms Act, 15 U.S.C.A. § 902(f), conflicts with the guarantee provided in the Second Amendment of the Constitution, U.S.C.A. providing that: "A well regulated Militia, being necessary to the security of a free State, the right of a people to keep and bear Arms, shall not be infringed."

This is the only reason set forth by the defendant for attacking the Act in question. In effect, the defendant contends that Congress is restrained by this Amendment from infringing upon the right of the people to bear arms. This is not the design of Congress in this legislation. On the contrary, it is apparent that Congress seeks here to control the interstate traffic in fire arms upon the part of criminals, and, in this respect, it is acting entirely within the scope of its powers.

Similar provisions for the control in Interstate Commerce, so as to minimize crime, have been held to be constitutional. Notable examples of this occurred in the instances of the so-called White Slave Act, 18 U.S.C.A. § 397 et seq. and the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408, the constitutionality of both of which has been sustained.

In Hoke v. United States, 227 U.S. 308, 322, 323, 33 S.Ct. 281, 284, 57 L.Ed. 523, 43 L.R.A.,N.S., 906, Ann.Cas.1913E, 905,

the White Slave Act was upheld, and the Court said:

"Our dual form of government has its perplexities, state and nation having different spheres of jurisdiction, as we have said; but it must be kept in mind that we are one people; and the powers reserved to the states and those conferred on the nation are adapted to be exercised, whether independently or concurrently, to promote the general welfare, material and moral.

\* \* \*

"The principle established by the cases is the simple one, when rid of confusing and distracting considerations, that Congress has power over transportation 'among the several states;' that the power is complete in itself, and that Congress, as an incident to it, may adopt not only means necessary but convenient to its exercise, and the means may have the quality of police regulations. Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 215, 5 S.Ct. 826, 29 L.Ed. 158, 166, 1 Inters.Com.Rep. 382; Cooley, Const.Lim. 7th Ed., 856."

In Brooks v. United States, 267 U.S. 432, 437, 45 S.Ct. 345, 346, 69 L.Ed. 699, 37 A.L.R. 1407, the Court sustained the Constitutionality of the National Motor Vehicle Theft Act, and said: "The objection to the act cannot be sustained. Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin. In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce."

The effort, under the Federal Firearms Act, is a similar exercise by the United States of its powers over interstate commerce with incidental exercise of police power for the benefit of the public at large.

The defendant specifically contends that this Act is inconsistent with his rights under the Second Amendment to the Constitution. With this contention I cannot agree. This legislation in no wise affects either the rights of the States to maintain their Militia or the rights of the people to keep and bear arms in a lawful manner within the States. This objection was considered in the case of United States v. Adams, D.C., 11 F.Supp. 216, 218 as follows: "The second amendment to

the Constitution [U.S.C.A.] providing, 'the right of the people to keep and bear arms, shall not be infringed,' has no application to this act. The Constitution does not grant the privilege to racketeers and desperadoes to carry weapons of the character dealt with in the act. It refers to the militia, a protective force of government; to the collective body and not individual rights. This is well presented in State v. Workman, 35 W.Va. 367, 372, 14 S.E. 9, 14 L.R.A. 600, and is sustained by the following: Hill v. State, 53 Ga. 472; Civil Rights Case, 109 U.S. 3, 31, 3 S.Ct. 18, 27 L.Ed. 835; Robertson v. Baldwin, 165 U.S. 275, 281, 17 S.Ct. 326, 41 L.Ed. 715; McKenna, The Right to Keep and Bear Arms."

Section 2(f) does not violate the Second Amendment to the Constitution.

The prayer of the defendant's petition will be denied.