Mr. Justice Scott delivered the opinion of the Court. On the 7th day of December, 1844, Chester Ashley commenced this action, against John Pope, upon a cause of action, on which the statute of limitations of three years began to run on the 26th of March, 1839; and, consequently, the bar of the statute would have been perfect in March, 1842, but for a provision in the 20th section of the statute that “if after such cause of action shall have accrued, such person depart from- and reside out of the State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.” To this action, after the death of Gov. Pope, his executor interposed the plea of the statute of limitations; to which Ashley replied Gov. Pope’s absence from the State after the accruel of the cause of action, so as to get the benefit of the provision of this section of the statute, and a demurrer was interposed.- In the meantime, however, on the Í4th day of December, 1844, (within seven days after the commencement of this suit) our Legislature had, by express enactment, repealed this 20th section of the statute. Upon this state of facts the question that is presented is, as to the effect of this enactment of repeal upon this cause of action, not as to its validity in general; because an act of the Legislature may be in operative as to one person, or for one purpose, though not as to another person, for another purpose. It will be observed thatthis is not a case where the rights, either perfect or imperfect, claimed by the plaintiffbelow grew out of the repealed statute, or were in any way incident to it; on the contrary, the repealed law, together with the entire limitation act, of which it was a part, was enacted expressly but to number-the years in which these rights might be asserted in a court of justice, their vitality springing from quite another source wholly independant. But it is a case, practically, where the Legislature have attempted to close the courts instanter against a party having legal rights in full life. Because although at first a given period had been allowed within which to commence an action under pain of closing the courts, before the expiration of that period, the legislature, by the operation of this statute of repeal, if valid, cut down that period! to- a point of time already elapsed,, and thereby instanter closed the courts against this cause of action. It is contended that the Legislature had the authority to do this, because this was a statute of limitations, and that it is known that laws of limitations operate not upon the right, but upon- the remedy. This may be conceded, and nevertheless we think it by no means follows that the Legislature had the power in question; because, for this to be so, it would have to be first shown that the power of the Legislature over the remedy was without limit, a task, we apprehend, not easily accomplised, because the people of this country, in constructing their government, have thought proper to reserve many rights to themselves, and thus have necessarily imposed corresponding limitation upon the powers of the government they have created. During the present term ofthis court in the proceeding of Martin v. The Swamp Land Commissioners, we have had occasion to develope one of these limitations upon the Legislative authority, and this case, almóstas a sequence,mustresultin another, andthattoo upon the same primitive foundation—the citizen’s inherent and indefeasible right to acquire, possess and protect property—having its roots in the social compact deeper than the government. A right, in which, in the language of Judge Green, in the case in 6 Randolph R. 245, “Liberty itself essentially consists,” and “which our ancestors in framing our constitution intended to secure effectually and forever;” and which we have held, in the case just cited, to be “a limitation imposed by the people upon the government of their own creation, designed to protect the weak against the strong, the minorty, against the majority.”. Thus blended with liberty itself, priceless in its value, and‘indefeasible in its nature, the barriers for its protection inviolate are in this country three-fold, and cannot be easily broken. “1st. The Bill of rights and written constitutions both of the Federal and State Governments, which being certain and defined, form a limitation upon power which cannot be transcended without usurpation. 2d. The right of bearing arms—which with us is not limited and restrained by any arbitrary system of game laws as in England, but is practically enjoyed by every citizen, and is among his most valuable privilages, since it furnishes the means of resisting, as a freeman ought, the inroads of usurpation. 3d. The right of applying to the courts of justice for the redress of grievances, (1 Tucker’s Lee. p., 43), a right that has been so enlarged by the constitution and laws of this State, that now, in the estimation of justice all men are equal, whether the citizen complains of the government, or the government complain of the citizen. (The State et al. v. Curran, 7 Eng. R. 321.) With the exception of the bill of rights, which is beyond its control, (Eason v. The State, 6 Eng. R. 481), all these meansfor thejpro tection of personal security, personal liberty and private property are within the limited scope of competent Legislative powei’s. Thus, the constitution may be amended within the great landmarks of freedom in accordance with the exigencies of enlightened progress. The right of bearing arms may be regulated, as by prohibiting the carrying of arms concealed about the person. (The State v. Buzzard, 4 Ark. R. 19. The State v. Reid, 1 Ala. 612. The State v. Mitchell, 3 Blackf. R. 229. And the right of applying to the courts of justice for the redress of grievances, may be regulated in a variety of modes touching the process for the administration of justice, and the time within which suits shall he commenced. But upon no pretence of regulating these rights, can they be destroyed, without the usurpation of powers by the Legislature which have been reserved to the citizen, and declared by them to be indefeasible; unless it could be supposed that powers that bad been entrusted to the legislature for bene-ficfent sway, could be rightfully perverted to destructive, capricious, and arbitrary rule, which would be absurd. And no less vain would be the right in the citizen to “acquire, possess and protect property,” if the courts of the country could be capriciously and arbitrarily closed against him through laws retrospective, .than by laws that would openly declare it to be the purpose of the Legislature to deny justice to all men, or to a particular class of citizens upon whose rights they had deemed it their province to sit in judgment. Of this latter class of enactments, .was the act of the Legislature, passed some years ago, denying to a defendant, sued upon a change ticket, any stay of execution, or right of appeal, certiorai, writ of error, or injunction, touching which the right of the citizen in question in this case, was properly vindicated by this court, in the case of Anthony Ex parte, (5 Ark. 359,) by declaring the act unconstitutional: and was again remarked upon by us in the case of Carroll v. Crawford county, (at page 619, of 6 Eng. R.) when construing a statute authorizing appeals in certain cases. We are aware that there are several of the most respectable authorities, which maintain that statutes of limitations, which create the bar instanter, or which do not allow a reasonable time after the passage of the law for the commencement of suits on existing demands, are unconstitutional, and that, for the most part, this opinion is rested upon the ground that such Legislajb on “impairs the obligation of the contract; within the meaning of the Federal Constitution, (Proprs. Ken. Purchase v. Labosee et. al., 2 Greenl. R. 292. Call v. Haggen, 8 Mass. R. 430. Somely vs. Wheeler, 2 Gall. R. 143 Slarges v. Crowninshield,4 Wheaton, 3 Peters R. 290,) but we have not feltfully convinced from the reasoning employed that this conclusion is altogether warranted,unless we suppose, which we incline to do, that statutes of limitation legally import something more than mere remedy. We have therefore in this case placed the nullity of this statute of repeal, quoad the case before us, upon the ground of its unconstitutional invasion of the right of private property, which to us seems altogether.clear. The other question in this case, as to the necessity of the affidavit prescribed by our statute, (Dig., p., 127 see. 93,) was correctly ruled by the court below. The affidavit is not required either by the letter or spirit of the statute in suits which are pending and undetermined at the time of the death of the defendant. Finding no error in the record, the judgment must be affirmed, Mr. Chief Justice Watkins did not sit in this case.