CALLAHAN, Circuit Judge,
dissenting,
in which SILVERMAN, Circuit Judge, joins as to all parts except section IV, BEA, Circuit Judge, joins, and N.R. SMITH, Circuit Judge, joins as to all parts except section II.B:
The Second Amendment is not a “second-class” constitutional guarantee. See McDonald v. City of Chicago, 561 U.S. 742, 780, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). In the watershed case District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. *946 2783, 171 L.Ed.2d 637 (2008), the Supreme Court held that the Second Amendment codified an existing individual right to keep and bear arms for self-defense. Two years later, the Court reaffirmed Heller in McDonald, 561 U.S. at 742, 130 S.Ct. 3020, and held that the individual right to bear arms for self-defense under the Second Amendment was fundamental and applied to the states. Although these opinions specifically address firearms in the home, any fair reading of Heller and McDonald compels the conclusion that the right to keep and bear arms extends beyond one’s front door. Like the rest of the Bill of Rights, this right is indisputably constitutional in stature and part of this country’s bedrock.
Plaintiffs assert that the counties’ concealed weapons licensing schemes, in the context of California’s regulations on firearms, obliterate their right to bear arms for self-defense in public. The Supreme Court in Heller addressed concealed-carry restrictions and instructed that those restrictions be evaluated in context with open-carry laws to ensure that the government does not deprive citizens of a constitutional right by imposing incremental burdens. Heller, 554 U.S. at 629, 128 S.Ct. 2783. In the context of present-day California law, the Defendant counties’ limited licensing of the right to carry concealed firearms is tantamount to a total ban on the right of an ordinary citizen to carry a firearm in public for self-defense. Thus, Plaintiffs’ Second Amendment rights have been violated. While states may choose between different manners of bearing arms for self-defense, the right must be accommodated.
The majority sets up and knocks down an elaborate straw argument by answering only a narrow question — whether the Second Amendment protects a right to carry concealed firearms in public. But this approach is contrary to Heller, and contrary to the prescribed method for evaluating and protecting broad constitutional guarantees. Indeed, the majority’s lengthy historical analysis fails to appreciate that many of its cited cases either presumed a right to openly carry a firearm in public or relied on a pre-Heller interpretation of the Second Amendment. Because the majority eviscerates the Second Amendment right of individuals to keep and bear arms as defined by Heller and reaffirmed in McDonald, I respectfully dissent.
I. The Individual Right to Bear Arms Extends Beyond the Home
A. Under Heller and McDonald, the individual right to bear arms for self-defense extends beyond the home
Our analysis begins with the text of the Second Amendment and the Supreme Court’s opinions in Heller and McDonald, which instruct that the right to bear arms extends beyond the home.
The Second Amendment guarantees “the right of the people to keep and bear Arms.” U.S. Const, amend. II. Heller held that the Second Amendment conferred an individual right to keep and bear arms for self-defense. 554 U.S. at 595, 128 S.Ct. 2783. Indeed, Heller adopted Justice Ginsburg’s definition of “carries a firearm” to mean “wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.” Id. at 584, 128 S.Ct. 2783 (quoting Muscarello v. United States, 524 U.S. 125, 143, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (Ginsburg, J., dissenting)). McDonald affirmed that the constitutional right to keep and bear arms applies to the states. McDonald, 561 U.S. at 778, 130 S.Ct. 3020 (“[T]he Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms *947 among those fundamental rights necessary to our system of ordered liberty”).
Heller and McDonald also instruct that the right to bear arms exists outside the home. Under these cases, the Second Amendment secures “an individual right protecting against both public and private violence,” indicating that the right extends in some form to locations where a person might become exposed to public or private violence. See Heller, 554 U.S. at 594, 128 S.Ct. 2783. The Court reinforced this view by noting that the need for the right is “most acute” in the home, id. at 628, 128 S.Ct. 2783, thus implying that the right exists outside the home. See also McDonald, 561 U.S. at 780, 130 S.Ct. 3020 (“[T]he Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.”). Heller also identifies “laws forbidding the carrying of firearms in sensitive places such as schools and government buildings” as presumptively lawful. 554 U.S. at 626, 128 S.Ct. 2783. Were the right to self-defense confined to the home, the validity of such laws would be self-evident.
The history of the Second Amendment also indicates that the right to bear arms applies outside the home. The common-law “right of having and using arms for self-preservation and defence,” according to Blackstone, protected “the natural right of resistance and self-preservation.” 1 William Blackstone, Commentaries *144. Blackstone’s Commentaries also made clear that Congress would exceed its authority were it to “pass a law prohibiting any person from bearing arms.” 1 William Blackstone & St. George Tucker, Blackstone’s Commentaries: With Notes of Reference, to the Constitution and Laws, of the Federal Government of the United States; and of the Commonwealth of Virginia 289 (St. George Tucker ed., 1803). Furthermore, the majority of Nineteenth Century courts agreed that the Second Amendment right extended outside the home and included, at minimum, the right to carry an operable weapon in public for the purpose of lawful self-defense.[1] Although some courts approved limitations on the manner of carry outside the home, none approved a total destruction of the right to carry in public.
Our sister circuits either have agreed that the Second Amendment right to bear arms extends outside the home or have assumed that the right exists. See Drake v. Filko, 724 F.3d 426, 431 (3d Cir. 2013) (recognizing that “the Second Amendment’s individual right to bear arms may have some application beyond the home”); Woollard v. Gallagher, 712 F.3d 865, 876 (4th Cir. 2013) (assuming without deciding “that the Heller right exists outside the home”); Moore v. Madigan, 702 F.3d 933, 937 (7th Cir. 2012) (“To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in Heller and McDonald.")-, Kachalsky v. Cty. of Westchester, 701 F.3d 81, 89 & n. 10 (2d Cir. 2012) (noting that “[t]he plain text of the Second Amendment does not limit the right to bear arms to the home,” and assuming that the Amendment has “some application” in the context of public possession of firearms (emphasis omitted)). Notably, the majority does not refute this analysis, hedging that “[t]he Second Amendment may or may not protect, to some degree, a right of a member of the general public to *948 carry firearms in public.” Maj. Op. 927. Thus, pursuant to Heller and McDonald, an individual’s right to self-defense extends outside the home and includes a right to bear arms in public in some manner.
B. States may choose between different manners of bearing arms for self-defense so long as the right to bear arms for self-defense is accommodated
Heller balances the Second Amendment right to bear arms in public with a state’s ability to choose between regulating open carry or concealed carry. Heller first noted that laws prohibiting concealed carry were examples of how the right secured by the Second Amendment was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose:
Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-cen-tury cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g., Sheldon, in 5 Blume 346; Rawle 123; Pomeroy 152-153; Abbott 333. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., State v. Chandler, 5 La.Ann. at 489-490; Nunn v. State, 1 Ga. at 251; see generally 2 Kent *340, n. 2; The American Students’ Blackstone 84, n. 11 (G. Chase ed. 1884). Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to east doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.
554 U.S. at 626-27, 128 S.Ct. 2783.
Importantly, while the Court enumerated four presumptively lawful “longstanding prohibitions,” it did not list prohibitions of concealed weapons as one of them. Instead, the Court identified concealed weapons prohibitions as an example of regulating the manner in which individuals can exercise their right to keep and carry a firearm for self-defense. The Court further noted that a prohibition on carrying concealed handguns in conjunction with a prohibition of open carry of handguns would destroy the right to bear and carry arms:
New laws in the history of our Nation have come close to the severe restriction of the District’s handgun ban. And some of those few have been struck down. In Nunn v. State, the Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though it upheld a prohibition on carrying concealed weapons). See 1 Ga. at 251. In Andrews v. State, the Tennessee Supreme Court likewise held that a statute that forbade openly carrying a pistol “publicly or privately, without regard to time or place, or circumstances,” 50 Tenn. [165] at 187 [ (1871) ], violated the state constitutional provision (which the court equated with the Second Amendment). That was so even though the statute did not restrict the carrying of long guns. Ibid. See also State v. Reid, 1 Ala. 612, 616—617 (1840) (“A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of de- *949 fence, would be clearly unconstitutional”).
Id. at 629, 114 S.Ct. 2445.
In sum, Heller indicates that concealed-weapons prohibitions may be proper as long as individuals retain other means to exercise their Second Amendment right to bear arms for self-defense. However, where other ways of exercising one’s Second Amendment right are foreclosed, a prohibition on carrying concealed handguns constitutes a “severe restriction” on the Second Amendment right, just like the District of Columbia’s unconstitutional handgun ban in Heller.
II. Given California’s Choice to Prohibit Open Carry, the Counties’ Policies of Not Allowing for Concealed Carry for Self-Defense are Unconstitutional
As the Plaintiffs have some right to carry a firearm in public for self-defense, the next task is to determine whether the counties’ policies, in light of the state’s open-carry restrictions, are constitutional. We have held (and the majority does not hold otherwise) that when -a law burdens conduct falling within the scope of the Second Amendment’s guarantee, a two-step inquiry is appropriate. Jackson v. City & Cty. of San Francisco, 746 F.3d 953, 963 (9th Cir. 2014). “The two-step inquiry we have adopted ‘(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny.’ ” Id. at 960 (quoting United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir. 2013)).
A. Procedural posture and California’s gun control regime
First, we consider the posture of this case in the context of California’s concealed- and open-carry laws. The Richards Plaintiffs filed suit in May 2009, and the Peruta Plaintiffs filed suit in October 2009. Both plaintiff groups challenged their respective counties’ concealed weapons licensing policies under the Second Amendment.
California prohibits an individual from carrying a concealed handgun in public. Cal. Penal Code § 25400 (prohibiting concealed carry of a loaded firearm in public). There are exceptions to. this prohibition on concealed carry, including for peace officers, military personnel, and persons in private security. Id. §§ 25450, 25620, 25630, 25650. There are also exceptions for persons engaged in particular activities, such as hunting. Id. § 25640.
A member of the general public, however, cannot carry a concealed handgun without a concealed-weapons license. The sheriff of a county may issue an applicant a license to lawfully carry a concealed handgun in the city or county in which that applicant works or resides. Id. §§ 26150, 26155. However, the applicant must be a resident of (or spend substantial time in) the county in which he or she applies, pass a background check, take a firearms course, demonstrate good moral character, and demonstrate “good cause.” Id. §§ 26150, 26155, 26165.
The counties’ interpretation of “good cause” is a focal point in this case. Both counties define “good cause” as requiring a particular need. San Diego County defines “good cause” as “a set of circumstances that distinguish[es] the applicant from the mainstream and causes him or her to be placed in harm’s way.” Similarly, Yolo County’s written policy requires “valid” reasons for requesting a license. Importantly, under both policies a general desire for self-protection and protection of family does not constitute “good cause.”
*950 In upholding the counties’ restrictions, the district courts relied on the fact that, at that time, California permitted unloaded open carry of handguns under then Penal Code § 12031(g). Thus, the district courts found that the counties’ licensing schemes did not substantially burden the right to bear arms for self-defense. Peruta v. Cty. of San Diego, 758 F.Supp.2d 1106, 1114 (S.D. Cal. 2010) (“As a practical matter, should the need for self-defense arise, nothing in section 12031 restricts the open carry of unloaded firearms and ammunition ready for instant loading.”); Richards v. Cty. of Yolo, 821 F.Supp.2d 1169, 1175 (E.D. Cal. 2011) (“Under the statutory scheme, even if Plaintiffs are denied a concealed weapon license for self-defense purposes from Yolo County, they are still more than free to keep an unloaded wéap-on nearby their person, load it, and use it for self-defense in circumstances that may occur in a public setting:”).
However, during the pendency of these appeals, California repealed its open-carry law, and enacted broad legislation prohibiting open carry of handguns in public places. AB 144, 2011-12 Leg., 2011-12 Sess. (Cal. 2011).[2] Thus, California now generally prohibits individuals from openly carrying a handgun — whether loaded or unloaded — in public locations. See Cal. Penal Code § 25850 (prohibiting carry of a loaded firearm); id. § 26350 (prohibiting open carry of an unloaded firearm).[3]
B. In the context of California’s ban on open carry, the counties’ ban on concealed carry for self-defense is unconstitutional
In .the context of California’s choice to prohibit open carry, the counties’ policies regarding the licensing of concealed carry are tantamount to complete bans on the Second Amendment right to bear arms outside the home for self-defense, and are therefore unconstitutional.
Heller defined the right to bear arms as the right to be “armed and ready for offensive or defensive action in a case of conflict with another person.” Heller, 554 U.S. at 584, 128 S.Ct. 2783 (quoting Muscarello, 524 U.S. at 143, 118 S.Ct. 1911 (Ginsburg, J., dissenting)). Here, California has chosen to ban open carry but grants its citizens the ability to carry firearms in public through county-issued concealed weapons licenses. Thus, in California, the only way that the average law-abiding citizen can carry a firearm in public for the lawful, constitutionally protected purpose of self- *951 defense is with a'concealed-carry license. And in San Diego and Yolo Counties that option has been taken off the table. Both policies specify that concern for one’s personal safety alone does not satisfy the “good cause” requirement for issuance of a license.
California’s exceptions to the general prohibition against public carry do little to protect an individual’s right to bear arms in public for self-defense. The exceptions for particular groups of law enforcement officers and military personnel do not protect the average citizen. Bearing arms on private property and at places of. business does not allow citizens to protect themselves by bearing arms in public. And the exceptions for “making or attempting to make a lawful arrest” or for situations of “immediate, grave danger” offer no solace to an individual concerned about protecting self and family from unforeseen threats in public.
Here, as in Heller, the exceptions are limited and do not adequately allow the ordinary citizen to exercise his or her right to keep and bear arms for self-defense within the meaning of the Second Amendment, as defined by the Supreme Court. Thus, the counties’ concealed-carry policies in the context of California’s open-carry ban obliterate the Second Amendment’s right to bear a firearm in some manner in public for self-defense. See also Moore v. Madigan, 702 F.3d 933, 936-42 (7th Cir. 2012) (striking down the open-and-concealed-carry regulatory regime in Illinois because the state failed to justify “so substantial a curtailment of the right of armed self-defense”).
C. If the counties’ policies were not a ban, remand to the district courts would be appropriate
Even if the counties’ policies in light of the California laws prohibiting open carry were not tantamount to complete bans, the proper remedy would be to remand to the district courts. The district courts did not have the benefit of our recent case law applying our Second Amendment framework. See Jackson, 746 F.3d at 963; Chovan, 735 F.3d at 1130. Additionally, the underlying statutory scheme has changed dramatically since the district courts’ decisions. At the time the district courts rendered their decisions, California permitted unloaded open carry, a fact that both district courts relied upon to find that the counties’ policies did not substantially burden any Second Amendment rights. See Peruta, 758 F.Supp.2d at 1114-15; Richards, 821 F.Supp.2d at 1175. However, open carry is now effectively prohibited.
Furthermore, reasonable jurists might find triable issues of material fact as to whether the policies substantially burden the right to carry a firearm in public for self-defense, whether there are open alternative channels to bear arms for self-defense, whether there are sufficient governmental interests that justify some of the restrictions, and whether the restrictions are sufficiently tailored to those interests. See Jackson, 746 F.3d at 963; Chovan, 735 F.3d at 1127. Thus, if the counties’ policies are to be upheld, in whole or in part, the parties ought to have the opportunity to present evidence as to these issues, and the district court ought to have the opportunity to consider this evidence under the correct framework.[4]
*952 Instead of remanding, the concurrence would hold that the concealed-weapons restrictions here survive intermediate scrutiny. The concurrence follows the approach of the Second, Third, and Fourth Circuits, which have held that states may limit the right to bear arms to persons who show good cause or meet a similar elevated standard. But the analyses in these cases are questionable as they rely on pre-Heller interpretations of the Second Amendment.[5] Even if Heller and McDonald are seen as a departure from any prior understanding of the Second Amendment, they are law and remain binding upon us.
III. The Majority Errs By Ignoring California’s Choice to Ban Open Carry and Focusing Myopically on the Counties’ Bans on Concealed Carry
The majority’s opinion is not in accord with our usual approach to broadly defined constitutional rights, and fails to appreciate the context in which the Plaintiffs’ challenges to the counties’ policies arise. Moreover, its historical analysis is largely irrelevant because it again fails to appreciate the contexts in which the cited cases arose.
A. Courts review a law’s constitutionality in that law’s larger context, just as the Supreme Court did in Heller
A holistic approach to evaluating concealed weapons laws in context of the open-carry laws comports with how courts have evaluated other laws that allegedly infringed on constitutional rights. In the First Amendment context, for example, our precedents inform us that we should not cabin our inquiry to the challenged law before us. Rather, the preferred course is to examine other, related laws to determine the nature of the asserted constitutional right and the extent of the burden on that right. See, e.g., Doe v. Reed, 561 U.S. 186, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010) (examining other disclosure laws to determine the constitutionality of a requirement to disclose petition signatories); Chula Vista Citizens for Jobs & Fair Competition v. Norris, 782 F.3d 520 (9th Cir. 2015) (en banc) (examining other disclosure laws to determine the constitutionality of a requirement to disclose the identity of a petition proponent). Similarly here, we must examine the applicable open-carry restrictions to determine the nature of Plaintiffs’ asserted right to some carry in public and the extent of the burden of the policies on that right.
*953 B. Defining the constitutional right to bear arms narrowly is inconsistent with judicial protection of other fundamental freedoms
Regardless of how a jurist feels about the Second Amendment, there can be no doubt that Heller construed the words “keep and bear arms” broadly to encompass an individual’s right to self-defense, as opposed to a collective right to keep and bear arms for maintaining a militia. The Court has defined other constitutional rights broadly as well. See, e.g., Obergefell v. Hodges, — U.S. -, 135 S.Ct. 2584, 2598, 192 L.Ed.2d 609 (2015) (defining constitutional right as right to marry, not right to same-sex marriage); Lawrence v. Texas, 539 U.S. 558, 566-70, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (right to privacy, not right to engage in sodomy); Griswold v. Connecticut, 381 U.S. 479, 485-86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to marital privacy, not the right to use birth control devices). Thus, the question in Obergefell was not whether the plaintiffs have a right to same-sex marriage, the question was whether the states’ limitation of marriage to a man and woman violated the right to marry. The question in Griswold was not whether there was a constitutional right to use birth control, but rather whether the state’s prohibition on birth control violated a person’s right to marital privacy.
So too here. The individual constitutional right that Plaintiffs seek to protect is not the right to concealed carry per se, but their individual right to self-defense guaranteed by Heller. States may choose how to accommodate this right but they must accommodate it. This distinction may be subtle, but it is critical. Narrowly defining the right may disguise a law’s substantive impact on a constitutional freedoms. See, e.g., Bowers v. Hardwick, 478 U.S. 186, 190, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (upholding sodomy law, holding that the Constitution does not “confer[] a fundamental right upon homosexuals to engage in sodomy”), overruled by Lawrence, 539 U.S. at 569, 123 S.Ct. 2472 (striking down sodomy law, holding that “criminal convictions for adult consensual sexual intimacy in the home violate[d] [plaintiffs’] vital interests in liberty and privacy protected by the Due Process Clause of the Fourteenth Amendment”).
The majority reasons, however, that “if that right is violated, the cure is to apply the Second Amendment to protect that right. The cure is not to apply the Second Amendment to protect a right that does not exist under the Amendment.” Maj. Op. 942. This is an over-simplistic analysis. The counties and California have chipped away at the Plaintiffs’ right to bear arms by enacting first a concealed weapons licensing scheme that is tantamount to a complete ban on concealed weapons, and then by enacting an open carry ban. Constitutional rights would become meaningless if states could obliterate them by enacting incrementally more burdensome restrictions while arguing that a reviewing court must evaluate each restriction by itself when determining its constitutionality. See Heller, 554 U.S. at 629, 128 S.Ct. 2783 (“A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional” (quoting State v. Reid, 1 Ala. 612, 616-17 (1840))). Indeed, such an approach was rejected by Heller which discussed concealed-carry laws in the context of open-carry prohibitions. Id.[6]
*954 By narrowly defining the asserted right as a right to concealed carry, the majority fails to recognize the real impact of the counties’ policies on the Second Amendment right to keep and bear arms.
C. Given the right to bear arms for self-defense extends beyond the home, states must accommodate that right to self-defense
As explained above, given the right to bear arms for self-defense exists outside the home, it follows then that states must accommodate that right. While Heller prohibits states from completely banning carrying a firearm in public for self-defense, it leaves states room to choose what manner of carry is allowed. States may choose how to accommodate the right by allowing only open carry, only concealed carry, or some combination of both. However, states may not disallow both manners of carry as the counties and California have done here.
The majority concedes that “[t]he Second Amendment may or may not protect to some degree a right of a member of the general public to carry a firearm in public.” Maj. Op. 927. However, it claims that “[i]f there is such a right, it is only a right to carry a firearm openly.” Maj. Op. 942. The majority’s holding — that California must accommodate the right to bear arms in public through open carry — is unsupported by Supreme Court precedent and contrary to federalism principles. The Supreme Court has never dictated how states must accommodate a right to bear arms. The majority’s cited cases, also cited in Heller, make this point clear. See, e.g., .Reid, 1 Ala. at 616-17 (“We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional.”); Nunn v. State, 1 Ga. 243, 243 (1846) (“A law which merely inhibits the wearing of certain weapons in a concealed manner is valid. But so far as it cuts off the exercise of the right of the citizen altogether to bear arms, or, under the color of prescribing the mode, renders the right itself useless — it is in conflict with the Constitution, and void.”).[7] Thus, the *955 majority errs by suggesting that states must accommodate the right to bear arms through open carry.
Moreover, the majority’s requirement that states accommodate the right to bear arms through open carry is unwise. States may have good reasons for allowing concealed carry but banning open carry. See Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and A Research Agenda, 56 UCLA L. Rev. 1443, 1521 (2009) (“In many places, carrying openly is likely to frighten many people, and to lead to social ostracism as well as confrontations with the police.”). Different states may have different opinions about whether concealed carry or open carry is preferable. The point is that, under Heller, states cannot prohibit both open and concealed carry, thus eviscerating the right to bear arms in public for self-defense.[8]
IV. The Counties’ Unfettered Discretion to Grant or Deny Concealed Weapons Licenses is Troubling
Finally, while the majority and I would decide this case on Second Amendment grounds, Plaintiffs have raised non-frivolous concerns as to whether the counties’ discretion as to who obtains a license violates the Equal Protection Clause and constitutes an unlawful prior restraint. The issues are not ripe for review, but I note that a discretionary licensing scheme that grants concealed weapons permits to only privileged individuals would be troubling.[9] Such discretionary schemes might lead to licenses for a privileged class including high-ranking government officials (like judges), business owners, and former military and police officers, and to the denial of licenses to the vast majority of citizens. See, e.g., McDonald, 561 U.S. at 771, 130 S.Ct. 3020 (“After the Civil War, many of the over 180,000 African Americans who served in the Union Army returned to the States of the old Confederacy, where systematic efforts were made to disarm them and other blacks. The laws of some States formally prohibited African-Americans from possessing firearms.” (citations omitted)); Br. for Congress of Racial Equality, Inc. as Amicus Curiae Supporting Appellants 15, 20, 24, ECF No. 249 (arguing that California’s gun control history evidences attempts to disarm ethnic minorities including persons of Mexican Heritage, Asian-Americans, and African-Americans); cf. Br. for Pink Pistols et al. as Amici Curiae Supporting Appellants 3, ECF No. 240 (“[Wjithout self-defense, there are no gay rights.” (alteration and emphasis omitted)). Whatever licensing scheme remains in place in California or in other states, the right to keep and bear arms must not become a right only for a privileged class of individuals.
The Second Amendment is not a “second-class” Amendment. See McDonald, 561 U.S. at 780, 130 S.Ct. 3020.
Undoubtedly some think that the Second Amendment is outmoded in a society *956 where our standing army is the pride of our Nation, where well-trained police forces provide personal security, and where gun violence is a serious problem. That is perhaps debatable, but what is not debatable is that it is not the role of th[e] [Supreme] Court to pronounce the Second Amendment extinct.
Heller, 554 U.S. at 636, 128 S.Ct. 2783. Today the majority takes a step toward extinguishing the Second Amendment right recognized by the Supreme Court in Heller and McDonald.
With no clear guidance from the Court regarding how to evaluate laws that restrict and obliterate the right to keep and bear arms for self-defense, the Second Amendment is becoming “[a] constitutional guarantee subject to future judges’ assessments” which is “no constitutional guarantee at all.” Id. at 634, 128 S.Ct. 2783.
Accordingly, I dissent.

. See Judge O’Scannlain’s comprehensive analysis of the historical underpinnings of the Second Amendment’s right to some form of carry for self-defense outside the home set forth in Peruta v. Cty. of San Diego, 742 F.3d 1144 (9th Cir. 2014), vacated 781 F.3d 1106 (9th Cir. 2015).

. AB 144 provided, among other things, that "[a] person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following: (A) A public place or public street in an incorporated city or city and county. (B) A public street in a prohibited area of an unincorporated area of a county or city and county. (C) A public place in a prohibited area of a county or city and county.'' Cal. Penal Code § 26350(a)(1).

. There are exceptions. California law permits (1) possession of a loaded or unloaded firearm at a person’s place of residence, temporary residence, campsite, on private property owned or lawfully possessed by the person, or within the person’s place of business, Cal. Penal Code §§ 25605, 26035, 26055; (2) the transportation or carrying of any pistol, revolver, or other firearm capable of being concealed upon the person within a motor vehicle, unloaded and locked in the vehicle's trunk or in a locked container in the vehicle, and carrying the firearm directly to or from any motor vehicle within a locked container, id. §§ 25505, 25610, 25850; (3) carrying a loaded or unloaded firearm in some unincorporated areas, id. §§ 25850(a), 26350(a); and (4) carrying a loaded firearm where the person reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property, id. § 26045.

. On a remand, I would apply heightened scrutiny. Jackson, 746 F.3d at 964 (noting that a “severe burden” on the Second Amendment right "requires [a] higher level of scrutiny”); see also Ezell v. City of Chicago, 651 F.3d 684, 691-92, 708 (7th Cir. 2011) (applying “rigorous” review “if not quite 'strict scrutiny’ ” to law that required firing range training prior to gun ownership but then banned all firing ranges).

. For example, in Drake, the Third Circuit upheld New Jersey's requirement that prior to receiving a license to carry a gun, either openly or concealed, an applicant had to show a "justifiable need.” 724 F.3d at 428. The court held that restrictions on concealed weapons are "longstanding regulation[s] that enjoyf] presumptive constitutionality,” and thus "regulated conduct falling outside the scope of the Second Amendment’s guarantee.” Id. at 434. Drake noted that New Jersey courts had upheld the restriction of gun permits in Siccardi v. State, 59 N.J. 545, 284 A.2d 533, 538 (1971), and Siccardi, in turn, relied on Burton v. Sills, 53 N.J. 86, 248 A.2d 521, 525-26 (1968). Drake, 724 F.3d at 432. Burton, however, erroneously held that the Second Amendment referred only to the collective right of the people to keep and bear arms, and not an individual right to self-defense. Burton, 248 A.2d at 526 ("As the language of the [Second] [Ajmendment itself indicates it was not framed with individual rights in mind. Thus it refers to the collective right 'of the people’ to keep and bear arms in connection with 'a well-regulated militia.' ”).
Similarly in Kachalsky, the Second Circuit noted that New York had long regulated the possession and use of firearms. 701 F.3d at 84-85. However, the Second Circuit acknowledged that "the law was upheld, in part, on what is now the erroneous belief that the Second Amendment does not apply to the states.” Id. at 85.

. Under the majority’s approach, a court reviewing a challenge to California's regulation *954 of the open carrying of firearms could not consider the fact that in some counties an ordinary citizen also cannot carry a concealed weapon.

. Because the majority miscasts the issue in these appeals, its historical analysis is largely irrelevant. But there are also substantive problems with that analysis. Some authorities are unpersuasive as they rely on a pre-Heller interpretation of the Second Amendment as being limited to a right to bear arms for purposes of maintaining a "well-regulated” militia. See, e.g., Aymette v. State, 21 Tenn. 154, 158 (1840) (limiting "arms” to mean those "such as are usually employed in civilized warfare, and that constitute the ordinary military equipment”); State v. Buzzard, 4 Ark. 18, 19 (1842) (rejecting individual Second Amendment right to self-defense; holding that right was tied to well-regulated militia); English v. State, 35 Tex. 473, 476 (1871) (“The •word 'arms' in the connection we find it in the constitution of the United States, refers to the arms of a militiaman or soldier, and the word is used in its military sense.”); State v. Workman, 35 W.Va. 367, 14 S.E. 9, 11 (1891) (limiting "arms” to mean those "weapons of warfare to be used by the militia, such as swords, guns, rifles, and muskets, — arms to be used in defending the state and civil liberty”).
Still other authorities, such as Robertson v. Baldwin, 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715 (1897), are of limited value because they fail to disclose whether the concealed-weapon law existed in conjunction with laws permitting open carry, or do not indicate whether the court interpreted the Second Amendment to be limited to a collective right related to the militia, instead of an individual right to *955 self-defense. See also Walburn v. Territory, 9 Okla. 23, 59 P. 972 (1899).

. Despite California’s belated appreciation of the importance of these appeals, the majority grants its motion to intervene. Hence, now that California is a party, there is no reason to confine our inquiry to the counties' policies. Rather, California's intervention supports examining Plaintiffs’ challenges to the counties’ policies in the context of the California open carry ban.

. Indeed, a declaration submitted by the County of San Diego indicates that the point of the concealed weapons licensing policy was to make concealed carry “a very rare privilege.”